UNITED STATES of America, Plaintiff,

v.

Ben ABATTI and Mickey H. Macklin, Defendants.

Crim. No. 78–0294.

United States District Court, S. D. California.

Dec. 22, 1978.

Herbert B. Hoffman, Asst. U.S. Atty., San Diego, Cal., for plaintiff.

James O. Hewitt, Harry D. Steward, San Diego, Cal., for defendant Abatti.

John A. Mitchell, San Diego, Cal., for defendant Macklin.

GORDON THOMPSON, Jr., District Judge.

The defendants have filed motions to dismiss the indictment on the grounds that an earlier decision adverse to the government in the Tax Court bars this criminal prosecution under the doctrine of collateral estoppel. The case arises from the transactions of a profitable farming operation owned and operated by defendant Ben Abatti and

his brother Tony. Defendant Macklin, an accountant, prepared the Abattis' tax returns during the years in question. Based upon the papers submitted by the parties and upon the arguments of counsel at a hearing on October 27, the court grants the defendants' motions to dismiss.

## I

### FACTS AND ISSUES

The history of this case begins in the Tax Court. The Commissioner of Internal Revenue determined that defendant Ben Abatti, Ben's brother Tony, and their wives had deficiencies in income tax for the years 1971, 1972, and 1973. The Abattis disputed the Commissioner's claims and filed petitions for redetermination. The Tax Court set the case for trial on March 27, 1978; on that date, after the government moved to continue the trial date, the Tax Court "reluctantly" reset the cases for trial on June 26. On June 7, because of the expected length of trial, the Tax Court ordered the case reset for trial on June 21. Prior to trial the court denied another government motion to continue and granted the petitioners' motions to shift the burden of proof and to exclude reliance on I.R.C. § 482. The trial lasted eleven days. R.T. at 12. On September 28, the Tax Court ruled in favor of the taxpayers and against the government.

Meanwhile, on April 4, a federal grand jury returned a twelve-count indictment against Macklin and Ben Abatti. The indictment charged Abatti with three counts of tax evasion in violation of I.R.C. § 7201 and with three counts of making a false tax return in violation of I.R.C. § 7206(1). It charged Macklin with six counts of aiding in the preparation of false tax returns in violation of I.R.C. § 7206(2). All twelve counts covered the years 1971, 1972, or 1973, the same years at issue in the Tax Court proceeding. All twelve counts alleged, in specific dollar amounts, understatements in taxable income, in gross income, or in income from partnerships and small business corporations.

Certain matters are not in issue. The government does not deny that a motion to dismiss is the proper vehicle for challenging the indictment on grounds of collateral estoppel. See Fed.R.Crim.P. 12(b). It agrees that collateral estoppel applies in criminal cases, see Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and it does not challenge the defendants' assertions that the first proceeding's civil character does not alter the preclusive effect of the Tax Court's decision. See Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). Nor do any of the parties attach significance to the Tax Court's status as an article I court. See I.R.C. § 7441. Finally, the government does not deny that Abatti and the United States were both parties to the Tax Court trial, while Macklin does not assert that he has ever been in privity with the Abattis.

The motion does present four questions. First, since the statutory time for appeal to the court of appeals from the Tax Court decision has not yet passed, does the principle of collateral estoppel apply to this proceeding? Second, did the Tax Court necessarily decide against the government any issue that is an element of the government's case in this proceeding? Third, even if collateral estoppel otherwise applies, should the court not invoke it on the grounds that the government did not have a "full and fair opportunity" to litigate its case in the Tax Court? Fourth, may Macklin take advantage of the decisions of the Tax Court in this litigation, even though he was not a party to the Tax Court proceeding?

## II

### THE EFFECT OF APPEAL

■ The government maintains that, because the United States may still appeal the Tax Court decision, the Tax Court decision is not yet final and therefore is not yet collateral estoppel as to this case. The absence of a final judgment in a case does not necessarily prevent it from being collateral estoppel on identical issues in another case.

See *Zdanok v. Glidden Co.,* 327 F.2d 944, 955 (2d Cir. 1964); *Aetna Cas. & Sur. Co. v. Jeppesen & Co.,* 440 F.Supp. 394 (D.Nev. 1977). The relevant question is whether litigation in the first case has concluded. Moreover, a decision in one proceeding in federal courts is collateral estoppel as to a later proceeding, even if the decision in the first case is under appeal. *See Deposit Bank v. City of Frankfort,* 191 U.S. 499, 510–11, 24 S.Ct. 154, 48 L.Ed. 276 (1903); *Performance Plus Fund, Ltd. v. Winfield & Co.,* 443 F.Supp. 1188 (N.D.Cal.1977). The reason for this latter rule is that a decision rendered by a court of competent jurisdiction is presumptively correct.

The government acknowledges that these rules apply generally in the federal courts. It claims, however, that Congress created a statutory exception applicable to this case, because I.R.C. § 7481(a)(1), the statute governing appeal from Tax Court decisions, says those decisions "shall become final [u]pon the expiration of the time allowed for filing a notice of appeal, if no such notice has been duly filed within such time." The government also quotes language from *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), that collateral estoppel applies only when there is "a valid and final judgment." Reading this language and the statute together, the government argues that, since the time for appeal has not elapsed, the statute acts as a bar to collateral estoppel in this proceeding.

Neither the government's reference to *Ashe* nor its interpretation of the statute is correct. In *Ashe* the Court's statement was dicta, because the finality of the first case was not in dispute. Moreover, as the government concedes, its argument turns upon whether Congress intended section 7481 to create an exception to the general rules outlined above. It did not. In *Denholm & McKay Co. v. Commissioner,* 132 F.2d 243, 248 (1st Cir. 1942), the First Circuit stated that it was

the evident purpose of Congress in prescribing so minutely the dates on which the Board decisions become final . . . to enable the Commissioner to know ex-

actly when he is at liberty to make the deficiency assessment . . . and . . . to enable the Commissioner to know the exact date on which he comes under the duty of allowing the credit or of making a refund.

The court quoted relevant passages from the Senate and House reports on the legislation enacting this statute. The reports do not mention collateral estoppel or res judicata. The authorities cited by the government fail to discuss congressional intent or do not involve disputes about the finality of the Tax Court's judgment. Since Congress did not intend I.R.C. § 7481 to modify the general rule about the collateral estoppel effects of decisions on appeal, the Tax Court's ruling, even if appealed, still may be collateral estoppel for this proceeding.

## III

## MATTERS NECESSARILY DECIDED IN THE FIRST LITIGATION

In its papers the government argues that the Tax Court did not necessarily decide against it any issue that is an element of its criminal prosecution. For the sake of clarity we discuss Abatti and Macklin separately.

*A. Abatti.* The government maintains, and the defendants do not dispute, that the defendants bear the burden of establishing that the Tax Court necessarily decided in their favor an issue they now seek to foreclose from litigation on the theory of collateral estoppel. *See Russell v. Place,* 94 U.S. 606, 24 L.Ed. 214 (1876); *United States v. Cala,* 521 F.2d 605 (2d Cir. 1975). The government concedes that the Tax Court decided against the government a question of ultimate fact—whether there was a deficiency in tax—that is an element of its three counts of tax evasion. It argues, however, that the other three counts against Abatti should not be dismissed, because neither of the questions decided by the Tax Court—whether there was a deficiency in tax and whether Abatti filed his returns with intent to defraud—are issues in those counts. Because we decide that the government is wrong with respect to

the deficiency in tax, we need not analyze the preclusive effect of the Tax Court's finding of no fraudulent intent.

To determine the preclusive effects of the Tax Court's decisions, we must first determine what the Tax Court necessarily decided. In a section of its opinion, entitled, "Ultimate Findings of Fact," the Tax Court stated, "Petitioners did not understate their taxable income for the taxable years 1971, 1972 or 1973 nor did they understate their income tax liabilities for the taxable years 1971, 1972 or 1973." *Abatti v. Commissioner*, Tax Ct.Mem.Dec. (P–H) ¶ 78,392, at 78–1599. At oral argument the government urged that this language is susceptible to two constructions. The Tax Court might have found that the taxpayers did not understate any of their gross income, taxable income, or income from businesses and partnerships. Alternatively, the Tax Court might have found that the taxpayers understated one or more of these types of income but that the taxpayers had offsetting unreported expenses. Since either construction is possible, neither construction should be accorded effect as collateral estoppel.

■■■ As the government notes, a court should take a "practical," rather than a "hypertechnical" approach, in determining what issues were necessarily resolved by the prior proceedings. *See Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).[1] Although it is metaphysically possible the Tax Court found both income and expenses understated, the only fair construction of the Tax Court's decision is that the taxpayers did not have income in excess of what they reported. The government's amended answer to the taxpayers' petitions for redetermination alleged that the taxpayers failed to report income. To make a prima facie case in the Tax Court, the government had to establish the truth of these allegations. *See United*

*States v. Ballard*, 535 F.2d 400 (8th Cir.), *cert. denied*, 429 U.S. 918, 97 S.Ct. 310, 50 L.Ed.2d 283 (1976). The Tax Court held, however,

> that based upon our examination of the entire record, respondent [Commissioner] has failed to make a prima facie case. Respondent failed to prove the allegations in his answer as amended at trial which would tend to prove petitioners owe any additional tax.

> \*   \*   \*   \*   \*   \*

> Respondent introduced no revenue agents' workpapers to support the adjustments he determined. We can only assume that either they are so intertwined with the inadmissible evidence that they make no sense independently, that none exist, or they would be unfavorable to respondent.

Tax Ct.Mem.Dec. (P–H) ¶ 78,392, at 78–1626 to –1627 (citations omitted). We have combed the Tax Court's opinion vainly searching for one scrap of evidence that the Tax Court found any offsetting understatement of expenses. Under these circumstances, the defendants have shown that the Tax Court's finding of no tax deficiency was equivalent to a finding of no income in excess of what was reported.

Having determined what the Tax Court decided, we next must determine whether that issue is also an issue in the false return counts. The government asserts that it is not. The false return statute, I.R.C. § 7206(1), requires the government to show that the defendant willfully subscribed a return that he does not believe to be true and correct "as to every material matter." The government claims, "It has been uniformly held that a tax deficiency is not an element of 26 U.S.C. § 7206, and need not be proved at all." *See* Government's Opposition and Response to Defendant Abatti's

---

**1.** In *Ashe* several people in a room were robbed. In the first trial Ashe was charged with armed robbery of one of these people, named Knight. There was no dispute that a robbery occurred or that Knight was a victim; the only question was Ashe's presence at the scene. The jury found Ashe not guilty. Although the jury theoretically might have found that no robbery occurred or that Knight was not a victim, the Supreme Court said that the only rationally conceivable decision was that Ashe was not in the room at the time of the robbery.

Motions at 15; Opposition to Defendant Macklin's Motions at 7–8. The defendants concede that, as a general proposition, this statement is correct; understatement of income need not be the statutory "material matter."

The flaw in the government's position, however, is that it has been pinioned by its own pleadings. For instance, COUNT FOUR of the indictment reads

> defendant BEN ABATTI . . . did willfully make and subscribe a United States individual income tax return, Form 1040, for the calendar year 1971, . . . which . . . he did not believe to be true and correct *in that the said return reported gross income of $65,-547.43 and income from partnerships and small business corporations (Schedules E&R, Part III) of $13,830.96, whereas, as he then and there well knew and believed, he had gross income substantially in excess of $65,457.43, and income from partnerships and small business corporations substantially in excess of $13,830.96.*

(Emphasis added.) Except for changes in dates and dollar amounts, the other two false return counts are identical. Under the specific terms of this indictment, therefore, the "material matter" falsely reported by Abatti was his income. The government does not deny that at trial it must show, as the indictment alleges, that Abatti's income was "substantially in excess" of what Abatti reported.

If it tried to make that showing, however, it would be relitigating the very issue —Abatti's income—that the Tax Court considered and decided adversely to the government. The years charged in the indictment and the years before the Tax Court are the same. The parties are the same. The government does not even deny the defendants' statement that the amounts in issue are, to the penny, the same. The particularity with which this indictment is phrased leads inescapably to the conclusion that the Tax Court has already decided adversely to the government an element of the government's case in the false return counts.

*B. Macklin.* The government argues that the Tax Court's findings did not resolve any issues in the charges against Macklin for aiding and abetting. This argument suffers from the same flaws stated with regard to Abatti. Under I.R.C. § 7206(2), the government must show that the defendant assisted in preparing a return that is fraudulent or false "as to any material matter." In this case the government charged that Macklin assisted the Abattis and their wives in preparing tax returns in 1971, 1972, and 1973 and that the returns were false as to a "material matter," because the returns allegedly understated income. This question the Tax Court has already decided adversely to the government.

## IV

## FULL AND FAIR OPPORTUNITY

Even if the court rules against it on the above two grounds, the government maintains that it should still be able to try its case, because it did not have a "full and fair opportunity" to litigate its claims in the Tax Court proceedings. It asserts the Tax Court proceeding was unfair, because the Tax Court did not grant the government's request for another continuance and because it ruled some evidence inadmissible. The government does not accuse the Tax Court of bias or failure to follow its own rules and procedures. The government just says that the Tax Court's rulings were wrong. The government cites two cases, *Performance Plus Fund, Ltd. v. Winfield & Co.,* 443 F.Supp. 1188 (N.D.Cal.1977) and *Blonder-Tongue v. University Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

Those cases do not help the government, since in neither did the party being estopped raise any claim about the "fairness" of the first proceeding. Moreover, even if the first proceeding must afford a "fair and full opportunity" to litigate, the government has not provided any authority to show that denial of a motion to continue or exclusion of evidence deprives a decision of

its collateral estoppel effect. On the contrary, in *Harris v. Washington*, 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971), the state of Washington argued that the trial court improperly excluded probative evidence in a prosecution for murder so that the state did not have a chance to litigate fully its charges against Harris. The Supreme Court said that collateral estoppel barred a second prosecution, even if the trial court did err in the first case.

■■■ The Supreme Court has stated that "matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel." *Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1947). The government's position, taken to its logical conclusion, would emasculate this principle and the policy of finality behind it. The loser in any case can point to some adverse ruling by the trial court at some stage of the litigation. Under the government's theory, the preclusive effect of that first suit will then turn on the loser's ability to convince a second court that the first court erred and that the loser might have won otherwise. The result—a rehearing of issues already decided—is exactly what the principle of collateral estoppel is supposed to prevent. *See* 1B Moore's Federal Practice ¶ 0.405[1] (2d ed. 1974). There may be some situations in which a trial court's *procedure* in disposing of matters of evidence and calendaring is so egregious that a subsequent court should not invoke the first decision as collateral estoppel. That the government lost the first time around, however, does not give it the right to try again.[2]

V

MUTUALITY OF ESTOPPEL

[8] Even if the charges against Abatti are dismissed, the government argues that

Macklin should not be able to invoke the Tax Court's rulings, because Macklin was not a party to the Tax Court's proceedings. If the court followed the government's suggestion, the result would be anomalous, since Macklin would be tried for aiding in an act—understatement of income—that the Tax Court already has ruled did not occur. Nonetheless, fifty years ago, the so-called rule of mutuality of estoppel might have prevented Macklin from taking advantage of the Tax Court's decision. *See Bigelow v. Old Dominion Copper Co.*, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912). The rule stated "that unless both parties (or their privies) in a second action are bound by a judgment in a previous case, neither party (nor his privy) in the second action may use the prior judgment as determinative of an issue in the second action." *Blonder-Tongue v. University Foundation*, 402 U.S. 313, 320–21, 91 S.Ct. 1434, 1439, 28 L.Ed.2d 788 (1971). Macklin was neither a party nor a privy to the Tax Court's trial.

Over the last forty years, however, the rule has been the subject of judicial attack and scholarly criticism. *See, e. g., Zdanok v. Glidden Co.*, 327 F.2d 944 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Bernhard v. Bank of America Nat. Trust & Sav. Ass'n*, 19 Cal.2d 807, 122 P.2d 892 (1942); Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine*, 9 Stan.L.Rev. 281 (1957). The Supreme Court surveyed the rule's erosion in *Blonder-Tongue v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) and stressed that

> these mutations in estoppel doctrine are not before us for wholesale approval or rejection. But at the very least they counsel us to re-examine whether mutuality of estoppel is a viable rule where a patentee seeks to relitigate the validity of a patent once a federal court has declared it to be invalid.

---

2. The government also argues that the evidence, even if properly excluded in the first trial, would be admissible in this criminal prosecution. Even if the government is correct, the availability of more evidence for a second trial does not nullify the collateral estoppel effect of the first trial. *See Harris v. Washington*, 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971); *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

*Id.* at 327, 91 S.Ct. at 1442 (footnote omitted). The Court went on to appraise the costs to the parties and the courts of continued adherence to the rule in patent litigation and to assess the rule's benefits. Having decided that there was no good reason for a *per se* rule of mutuality, the Court remanded the case for the trial court to determine whether there was any reason "why an estoppel should not be imposed in this case." *Id.* at 350, 91 S.Ct. at 1454.

We can see no good reason for a *per se* rule of mutuality in tax cases.[3] The government has not pointed out any benefit that adherence to the rule serves. On the other hand, mutuality burdens court dockets and arguably misallocates resources.

> To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully, litigated the same claim in the prior suit, the defendant's time and money are diverted from alternative uses—productive or otherwise—to relitigation of a decided issue. . . . Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or "a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure."

*Id.* at 329, 91 S.Ct. at 1443 (citation omitted).

Nor, on balance, do the facts of this particular case justify adherence to the rule. The Court recognized in *Blonder-Tongue* that "no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estop-

pel pleas." *Id.* at 333–34, 91 S.Ct. at 1445. Like other tribunals, however, *see, e. g., Zdanok v. Glidden Co.,* 327 F.2d 944 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964), the Court suggested several factors to consider. Taken together, these factors suggest that estoppel is appropriate here.

The government was, for all intents and purposes, the plaintiff in the first proceeding, and as such, it could control the circumstances of litigation. At the time of the Tax Court trial, the government had every incentive to litigate its case fully, both because of the stakes involved there and because it knew that the criminal trial was "waiting in the wings." *Id.* Moreover, whatever the government's complaints about the Tax Court's exclusion of evidence, the trial in the Tax Court was neither perfunctory nor abbreviated; the trial lasted eleven days, during which the government called numerous witnesses, including Abatti. The Tax Court decision cannot be ascribed to an irrational or sympathetic jury. *See id.* at 956; *Divine v. Commissioner,* 500 F.2d 1041, 1047 (2d Cir. 1974). Nor can the government plausibly argue that this is "one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit." *Blonder-Tongue v. University Foundation,* 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971). Finally, the government has not shown that relitigation of the Abattis' income during the years in question will resolve "intolerable uncertainties in the interpretation of the tax laws." *Divine v. Commissioner,* 500 F.2d 1041, 1049 (2d Cir. 1974).[4] Since here the rule is costly

---

**3.** The few courts that have considered this question are split. *Compare Divine v. Commissioner,* 500 F.2d 1041 (2d Cir. 1974) *and Kurlan v. Commissioner,* 343 F.2d 625 (2d Cir. 1965) *and Popp v. Eberlein,* 409 F.2d 309 (7th Cir.), *cert. denied,* 396 U.S. 909, 90 S.Ct. 222, 24 L.Ed.2d 185 (1969) *and Baily v. United States,* 355 F.Supp. 325 (1973), *aff'g* 350 F.Supp. 1205 (E.D.Pa.1972) *with Bernuth v. Commissioner,* 57 T.C. 225, 233 (1971), *aff'd,* 470 F.2d 710 (2d Cir. 1972). We note with passing interest that the United States urged the abandonment of the rule of mutuality in *Blonder-Tongue. See* Brief for United States as Amicus Curiae at

8–24, *Blonder-Tongue v. University Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

**4.** Although the Court in *Blonder-Tongue* stated that one factor to consider was whether "without fault of his own" the party being estopped "was deprived of crucial evidence or witnesses in the first litigation," 402 U.S. at 333, 91 S.Ct. at 1445, its subsequent decision in *Harris v. Washington,* 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971), made clear that it was not referring to a court's erroneous evidentiary rulings that exclude probative evidence.

and its benefits meager, there is no good reason why an estoppel should not be imposed.

## VI

## CONCLUSION

Accordingly, the defendants' motions to dismiss are GRANTED.