## CHARLES ELLSWORTH CARBAUGH, JR. *v.* STATE OF MARYLAND

[No. 131, September Term, 1981.]

*Decided September 13, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen Rosenbaum, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The petitioner, Charles Ellsworth Carbaugh, Jr., was charged in the District Court of Maryland, sitting in Allegany County, with speeding (driving 102 miles per hour in a 55 miles per hour zone) and driving when his license was revoked. Carbaugh prayed a jury trial, and the case was removed to the Circuit Court for Allegany County.[1] Carbaugh filed no pre-trial motions to dismiss pursuant to Maryland Rule 736.[2] When the case was called for trial,

---

**1.** *See* Maryland Code (1974, 1980 Repl. Vol., 1981 Cum. Supp.), § 4-302 (d) of the Courts and Judicial Proceedings Article.

**2.** Rule 736 provides in pertinent part as follows:

"Rule 736. Motions Before Trial.
    a. *Mandatory Motions.*
    A motion asserting one of the following matters shall be filed in conformity with this Rule. Any such matter not raised in accordance with this Rule is waived, unless the court, for good cause shown, orders otherwise:
    1. A defect in the institution of the prosecution;
    2. A defect in the charging document, other than its failure to show jurisdiction in the court or to charge an offense which defenses can be noticed by the court at any time;
    3. An unlawful search, seizure, interception of wire or oral communication, or pre-trial identification;
    4. An unlawfully obtained admission, statement or confession;
    5. A motion for joint or separate trial of defendants or offenses.
    b. *Time for Filing Mandatory Motions.*
    A motion filed pursuant to section a of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), except

Carbaugh pled not guilty to both charges and waived his right to a jury trial.

The State's first witness was Trooper R. J. Sivic of the Maryland State Police. Sivic testified that he was patrolling U.S. Route 40 by automobile, working in conjunction with an airborne speed surveillance, and that he was advised by those in the airplane that a 1975 silver Chevrolet automobile was approaching at a high rate of speed. Shortly thereafter, he observed the Chevrolet coming toward him. At the time, Sivic believed that the vehicle was being driven by someone wearing a green shirt. He "flagged the vehicle to the shoulder of the road," but, instead of stopping the automobile on the shoulder, the driver drove it into a private driveway. When Sivic reached the driveway, all five occupants of the car had gotten out. The Trooper approached Carbaugh, who was wearing a green shirt and who, the Trooper believed, had been the driver. Sivic requested Carbaugh's driver's license and vehicle registration card, but Carbaugh responded that he had not been driving. According to Sivic, "all the parties there stated that Michael Yonker was driving the car." Sivic then asked Yonker several times whether he had been the driver, warning him of the seriousness of the charge, and Yonker repeatedly insisted that he had been the driver. Sivic, thinking that he must have been mistaken in believing that Carbaugh had been operating the vehicle, issued a citation to Yonker charging him with speeding.

Trooper Sivic further testified that soon after Carbaugh, Yonker and their companions left the scene, another state police officer, Trooper Lewis, who had also been working with the airborne speed surveillance, and who had been nearby issuing a citation to another motorist at the time, approached Sivic and asked which one he had charged. Upon

when discovery is furnished on an issue which is the subject of the motion, then the motion may be filed within five days after the discovery is furnished."

\* \* \*

being told, Lewis replied that Sivic had charged the wrong person, and that the one wearing a green shirt had been driving.

Trooper Sivic testified that he later checked Carbaugh's driving record, determined that Carbaugh's operator's license had been revoked, and charged him with both speeding and driving while his license was revoked. With regard to the disposition of the citation issued to Yonker, Sivic testified that Yonker had paid the fine.

The State's second witness was Trooper Lewis who testified that he also had observed the 1975 silver Chevrolet automobile traveling in excess of the speed limit. Lewis positively identified the defendant Carbaugh as the driver. In addition, Lewis's testimony largely corroborated that of Sivic.

At the conclusion of the State's case, the defendant testified that he had not been the driver and that Yonker had been driving. In addition, Yonker and two of the passengers in the car all testified that Yonker had been the driver.

The trial court, crediting the testimony of the two police officers, found Carbaugh guilty of driving while his license was revoked, sentenced him to six months in jail, and suspended five months of the sentence. Carbaugh appealed to the Court of Special Appeals, arguing that Yonker's payment of the fine upon the citation issued by Trooper Sivic, constituted a final judgment settling the issue of who was driving. Carbaugh contended that the principle of collateral estoppel, as embodied in the Double Jeopardy Clause of the Fifth Amendment, precluded his conviction for the offense.

The Court of Special Appeals affirmed, although it did not reach the merits of the defendant's double jeopardy claim. The intermediate appellate court held that Rule 736 a. 1. encompassed a double jeopardy claim, and that Carbaugh's failure to file a timely pre-trial motion under the rule constituted a complete waiver of his double jeopardy contention. *Carbaugh v. State,* 49 Md.App. 706, 435 A.2d 116 (1981).

Carbaugh filed a petition for a writ of certiorari presenting two questions:

"1. Does failure to file a timely motion to dismiss pursuant to Maryland Rule 736 waive the defense of double jeopardy?

"2. In view of the prior conviction of another for speeding, could Petitioner be convicted of having driven with a revoked license the same car at the same time?"

The State filed no cross-petition. Because of the position taken by the Court of Special Appeals concerning waiver of a double jeopardy claim, and because the second issue appeared to be a novel one in this State, we granted the petition.

(1)

First, we reject the holding of the Court of Special Appeals that the defendant's double jeopardy contention was waived by his failure to file a pre-trial motion under Rule 736.

With regard to double jeopardy claims designed to prevent or invalidate trials, this Court has repeatedly taken the position that the waiver concept of *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938), is applicable, and that an effective waiver requires knowing and intelligent action by the defendant himself.[3] *See, e.g., Davis v. State,* 285 Md. 19, 33, 400 A.2d 406 (1979); *Curtis v. State,* 284 Md. 132, 144, 395 A.2d 464 (1978); *Jourdan v. State,* 275 Md. 495, 507, 341 A.2d 388 (1975). This is the position taken by the Supreme Court in *Green v.*

---

**3.** Some multiple punishment aspects of the double jeopardy prohibition may present different considerations. Thus, we agree with the Court of Special Appeals that a challenge to concurrent sentences on a greater offense and on a lesser included offense must be properly raised or it is deemed waived, regardless of the "knowing and intelligent" standard. *See, e.g.,* Rose v. State, 37 Md. App. 388, 393-394, 377 A.2d 588, *cert. denied,* 281 Md. 743 (1977).

*United States,* 355 U.S. 184, 191-192, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).[4]

There has been no contention in this case that the defendant knowingly and intelligently waived his double jeopardy claim; moreover, the record would not support any such contention if it were made. Consequently, the defendant's failure to file a motion under Rule 736 did not constitute a waiver of the claim.

We assume for purposes of this case that Rule 736 a. 1., providing that a motion asserting a "defect in the institution of the prosecution" should be made before trial, does encompass some types of motions asserting double jeopardy claims.[5] *See Pulley v. State,* 287 Md. 406, 408, 412 A.2d 1244 (1980) (similarly "assuming" that Rule 736 applied to motions to dismiss on double jeopardy grounds). Furthermore, as indicated in *Pulley,* 287 Md. at 415, raising the double jeopardy issue prior to trial is necessary if the defendant desires to exercise his right of an immediate appeal from an order overruling his double jeopardy defense. Otherwise, the right of immediate appeal is waived, and the defendant must await a final judgment in the criminal case before an appeal may be taken and the double jeopardy issue raised. Nevertheless, at least absent a knowing and intelligent relinquishment of the claim, the double jeopardy claim may be raised on an appeal from the final judgment regardless of whether a pre-trial motion had been made.

---

4. In fact, under some circumstances, the Supreme Court has indicated that a double jeopardy claim is not even waived by knowing and intelligent action on the defendant's part. The Court in Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), held that a double jeopardy claim was not waived by a knowing and intelligent guilty plea. *See also* Blackledge v. Perry, 417 U.S. 21, 29-31, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

5. Whether the rule would encompass the double jeopardy claim in the instant case, however, is doubtful. The record indicates that when the instant prosecution was instituted, Yonker had not paid the fine on the citation issued to him. It was paid after the present case was instituted but before trial. Therefore, even if the defendant's double jeopardy claim had merit, there would have been no "defect in the *institution* of the prosecution" within the literal language of the rule.

(2)

Although we agree with the defendant that he has not waived his double jeopardy claim, we find no merit in that claim and, therefore, shall uphold his conviction.

In holding that the rule of collateral estoppel is embodied in the Fifth Amendment's double jeopardy prohibition, the Supreme Court in *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), initially set forth the rule as follows (emphasis supplied):

> " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated *between the same parties* in any future lawsuit."

Later, in explaining why the rule is embodied in the Double Jeopardy Clause, the Court stated: "For whatever else that constitutional guarantee may embrace . . ., it surely protects a man who has been acquitted from having to 'run the gantlet' a second time." 397 U.S. at 445-446. Recently, in *Powers v. State,* 285 Md. 269, 283-284, 401 A.2d 1031, *cert. denied,* 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979), in discussing the application of the collateral estoppel principle to criminal cases, Judge Davidson pointed out for the Court that

> "the primary purpose of the doctrine of collateral estoppel is to protect an accused from the unfairness of being required to relitigate an issue which has once been determined in his favor by a verdict of acquittal."

The principle of collateral estoppel, as embodied in the double jeopardy prohibition, is clearly inapplicable to the case at bar. Assuming that Yonker's payment of the fine represented a final judgment litigating between the State and Yonker the issue of who was driving, the defendant

Carbaugh was not a party to that case. The State has not attempted to relitigate the same issue "between the same parties." Carbaugh was not previously acquitted of criminal charges on the ground that he was not driving. He was not required to "relitigate an issue which has once been determined in his favor by a verdict of acquittal." *Powers,* 285 Md. at 284.

As the Supreme Court of New Jersey stated in a very similar case involving the question of which person was unlawfully operating a motor vehicle, "[c]ollateral estoppel applies only where the person involved was a party in both proceedings." *State v. Redinger,* 64 N.J. 41, 312 A.2d 129, 132 (1973). *See also United States v. Musgrave,* 483 F.2d 327, 332 (5th Cir.), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); *Scheiss v. State,* 71 Wis.2d 733, 239 N.W.2d 68, 73-74 (1976). The defendant Carbaugh, not having been a party to the prior case involving the question of which occupant had been driving the automobile, gains no protection from the Fifth Amendment's Double Jeopardy Clause.[6]

*Judgment affirmed.*
*Petitioner to pay costs.*

---

**6.** Thus, the scope of collateral estoppel for double jeopardy purposes is not co-extensive with its application in civil cases. Com. v. Brown, 473 Pa. 458, 463, 375 A.2d 331, 334 (1977); Note, *Collateral Estoppel in Criminal Prosecutions,* 46 S. Cal. L. Rev. 922, 959-961 (1973). With regard to the application of collateral estoppel in civil cases where there is not an absolute identity of parties, *see* Greenwell,v. American Guaranty, 262 Md. 102, 113-114, 277 A.2d 70 (1971); Pat Perusse Realty Co. v. Lingo, 249 Md. 33, 238 A.2d 100 (1968).