470 A.2d 797

William Theodore BOWLING, Jr.

v.

STATE of Maryland.

No. 97, Sept. Term, 1982.

Court of Appeals of Maryland.

Feb. 2, 1984.

Patrice E. Lewis and Joseph A. De Paul, College Park (Joseph A. De Paul, P.A., College Park, on brief), for appellant.

Stephen Rosenbaum, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Retired, Specially Assigned Judge.

ELDRIDGE, Judge.

Under the circumstances of this case, we hold that the doctrine of collateral estoppel prevents the State from criminally trying the defendant on charges of sexual assault and related offenses when, in a prior civil proceeding based upon the same alleged incidents, the court dismissed the action on the ground that the State had failed to prove that the defendant had committed the acts.

On November 7, 1981, Staci Lenee Bowling, then fourteen years old, went to the Charles County Sheriff's Department and alleged that, beginning in August 1981 and on other occasions thereafter, her adoptive father, William Theodore Bowling, Jr., had engaged in sexual conduct with her in their home. She indicated that she was seeking shelter in the home of her natural father, Richard Eddy. Subsequently a Child in Need of Assistance (CINA) petition was filed in the Circuit Court for Charles County.[1] The basis for the petition was Staci's allegations of sexual abuse.[2] Staci was

---

1. Maryland Code (1974, 1980 Repl.Vol.), § 3–801(e) of the Courts and Judicial Proceedings Article, provides as follows:

"(e) *Child in need of assistance.*—"Child in need of assistance" is a child who requires the assistance of the court because

(1) He is mentally handicapped or is not receiving ordinary and proper care and attention, and

(2) His parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and his problems provided, however, a child shall not be deemed to be in need of assistance for the sole reason he is being furnished nonmedical remedial care and treatment recognized by State law."

A CINA proceeding is neither tantamount to a delinquency proceeding nor the equivalent of a Child in Need of Supervision (CINS) petition. *See infra* note 3. Rather, the purpose of the proceeding is to examine the child's environment and determine whether that child is receiving proper care from his parents, guardians or custodians. *See* Note, *Maryland Laws on Child Abuse and Neglect: History, Analysis and Reform,* 6 U.Balt.L.Rev. 113, 121 (1976).

2. Although the entire transcript of the CINA trial is included in the present record, the petition itself was not included. The record in this case, however, as well as the transcript of the CINA trial, clearly indicate the grounds for the petition. Moreover, the State conceded at oral argument that the basis for the CINA petition was the alleged incidents of sexual abuse.

placed in the custody of the Charles County Department of Social Services, and, at the time of the hearing, she was living with Mr. Eddy.

The hearing on the petition was held before the circuit court on December 14, 1981, to determine whether Staci Lenee Bowling was a "child in need of assistance" within the meaning of § 3–801(e). The testimony at the hearing dealt almost exclusively with whether or not the alleged incidents of sexual misconduct had actually occurred.

Following the presentation of the evidence, the circuit judge found as follows:

"In this case the allegations as to the failure to receive ordinary and proper care and attention involve an allegation by the child that she was sexually abused by her adoptive father, Mr. Bowling, initially on the 16th day of August and on two or three, and then on cross-examination three or four subsequent occasions, the dates of which are apparently marked on her calendar, but not available to her today . . . .

\* \* \* \* \* \*

"And the evidence in this case in my mind is in a state of even balance. *I have not been persuaded by a preponderance of the evidence,* in spite of the fact that I have tried in looking at this case to look at it in a light most favorable to the young lady, and cross-examined all of her witnesses trying to see if I could detect any flaw in their statements that would convince me that her side is right and her parents' side is wrong.

"The State, of course, has the burden of proving that to me. *And I would say that I am not persuaded by a preponderance of the evidence that this sexual abuse did, in fact, take place.*" (Emphasis added.)

After discussing the tensions existing within the Bowling family, the circuit judge addressed the issue of whether or not to grant the CINA petition. The court viewed § 3–801(e) as providing for a two-prong test to determine whether a child is "in need of assistance" within the meaning of

the statute. According to the court, one prong of the test necessitated a finding that "the parents, guardians or custodian are unable or unwilling to give proper care to the child and his problem," and the second prong required a finding "that her parents are doing something or failing to do something with respect to her care and attention that a parent should be providing." As the court was not persuaded that the sexual abuse had occurred, it found that the second "prong" of the test was not met. The circuit judge concluded:

> "I think, in fact, that what we are dealing with here is a case of a child in need of supervision as opposed to a case of a child in need of assistance. *And I must, I feel, under the allegations contained in the case, dismiss the petition, because I do not feel the State has proven . . . that case.*" (Emphasis added.)

Although it dismissed the CINA petition, the court indicated that it would be favorably disposed to granting a Child in Need of Supervision (CINS) petition.[3]

■ Subsequently an indictment was filed in the Circuit Court for Charles County charging William Theodore Bowling, Jr., with sexual offenses, child abuse and assault upon his daughter Staci. The indictment was grounded on the identical factual allegations which formed the basis for the earlier CINA petition. The defendant moved to dismiss the indictment, claiming that the December 14, 1981, order of the Circuit Court for Charles County dismissing the CINA

---

**3.** Section 3–801(f) of the Courts and Judicial Proceedings Article states:

"(f) *Child in need of supervision.*—"Child in need of supervision" is a child who requires guidance, treatment, or rehabilitation and
　(1) He is required by law to attend school and is habitually truant; or
　(2) He is habitually disobedient, ungovernable, and beyond the control of the person having custody of him; or
　(3) He deports himself so as to injure or endanger himself or others; or
　(4) He has committed an offense applicable only to children."
Unlike § 3–801(e), which examines the child's environment, § 3–801(f) is primarily concerned with acts committed by the juvenile.

petition precluded the State from relitigating the issue of whether defendant had engaged in the charged conduct. In a memorandum supporting the motion to dismiss, the defendant cited both the common law doctrine of collateral estoppel and collateral estoppel as embodied in the double jeopardy prohibition of the Fifth Amendment, although his principal reliance was upon the latter. The circuit court denied the motion on the ground that "jeopardy . . . did not attach" at the juvenile hearing. The defendant took an immediate appeal, and, prior to argument in the Court of Special Appeals, this Court issued a writ of certiorari.[4]

As pointed out by Judge Delaplaine for the Court in *Scarlett v. State,* 201 Md. 310, 318, 93 A.2d 753, *cert. denied,* 345 U.S. 955, 73 S.Ct. 937, 97 L.Ed. 1377 (1953), the common law "doctrine . . . which precludes relitigation of the same factual issues in any subsequent trial, applies to criminal as well as civil proceedings and operates to conclude those matters in issue which the verdict determined although the offense is different." *See Cook v. State,* 281 Md. 665, 668, 381 A.2d 671, *cert. denied,* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978) ("It is beyond question that the closely related doctrines of res judicata and collateral estoppel apply to criminal as well as civil causes"); *Rouse v. State,* 202 Md. 481, 486, 97 A.2d 285, *cert. denied,* 346 U.S. 865, 74 S.Ct. 104, 98 L.Ed. 376 (1953); *State v. Coblentz,* 169 Md. 159, 164–166, 180 A. 266 (1935). Not only is collateral estoppel applicable to criminal cases as a common law matter, but the principle of collateral estoppel is embodied in the Fifth Amendment's prohibition against double jeopardy. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Carbaugh v. State,* 294 Md. 323, 329, 449 A.2d 1153 (1982); *Powers v. State,* 285 Md. 269, 283–284, 401 A.2d 1031, *cert. denied,* 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979); *Cook v. State,*

---

4. An immediate appeal may be taken from a pre-trial order denying a motion to dismiss on the ground of double jeopardy. *In re Mark R.,* 294 Md. 244, 246 n. 2, 449 A.2d 393 (1982); *Pulley v. State,* 287 Md. 406, 414–415, 412 A.2d 1244 (1980); *Neal v. State,* 272 Md. 323, 326, 322 A.2d 887 (1974).

*supra,* 281 Md. at 668 n. 2, 381 A.2d 671; *Cousins v. State,* 277 Md. 383, 398, 354 A.2d 825, *cert. denied,* 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (1976).

█ As the above-cited cases make clear, for the State to be precluded in a criminal trial from relitigating an issue resolved against it at a prior proceeding, the following requirements ordinarily must be met. First, the earlier proceeding must have ended with a final judgment or "final determination" of the issue. *Cousins v. State, supra,* 281 Md. at 398, 354 A.2d 825. *See Carbaugh v. State, supra,* 294 Md. at 329, 449 A.2d 1153 (assuming that the payment of a traffic ticket was a "final judgment" determining the issue that the defendant was the driver of the vehicle); *Cook v. State, supra.* Second, the defendant must have been a party to both proceedings. *Carbaugh,* 294 Md. at 330, 449 A.2d 1153.[5] Third, the resolution of the issue at the earlier proceeding cannot have been unnecessary or mere dicta; instead it must have been an ingredient or a basis of the decision. As the Court put it in *Scarlett v. State, supra,* 201 Md. at 318, 93 A.2d 753, the factual issue must have been a matter "which the verdict determined." Or, as stated in more recent cases, it must have been "an issue of ultimate fact." *Ashe v. Swenson, supra,* 397 U.S. at 443, 90 S.Ct. at 1194; *Powers v. State, supra,* 285 Md. at 279, 282, 401 A.2d 1031; *Cousins v. State, supra,* 277 Md. at 398, 354 A.2d 825. In applying this requirement, however, the Supreme Court in *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, cautioned that

"the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior

---

5. As mentioned in the *Carbaugh* case, 294 Md. at 330, n. 6, 449 A.2d 1153, the general requirement of an identity of parties for invoking collateral estoppel may be stricter in criminal cases than in civil cases.

proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' "

*See Powers,* 285 Md. at 288, 401 A.2d 1031.

■ In the case at bar, the above-discussed requirements were satisfied. There was unquestionably a final judgment terminating the earlier CINA proceeding. Moreover, the defendant Bowling was clearly a party to the CINA proceeding. Under Code (1974, 1980 Repl.Vol., 1983 Cum.Supp.), § 3–801(q) of the Courts and Judicial Proceedings Article, a parent is a party to a CINA proceeding of which his or her child is the subject.[6] The CINA proceeding subjected Bowling to the possible imposition of sanctions, including the loss of custody of his daughter[7] and an order "to pay a sum in the amount the court directs to cover" her support.[8] Finally, whether or not Bowling committed the alleged sexual abuse was an ultimate issue of fact resolved against the State at the CINA proceeding. The failure of the State to prove that Bowling committed the acts was the sole basis for the judgment dismissing the CINA petition. Because this factual issue was resolved against the State, the court at the CINA proceeding determined that an essential statutory element for a CINA adjudication was absent.

In denying the motion to dismiss the subsequent criminal charges on the ground of collateral estoppel, the court below

---

6. That section defines "party" as follows:
    (q) *Party.*—"Party" includes a child who is the subject of a petition, the child's parent, guardian, or custodian, the petitioner and an adult who is charged under § 3–831 of this subtitle.

7. Section 3–820 of the Courts and Judicial Proceedings Article of the Code.

8. Section 3–830 of the Courts and Judicial Proceedings Article of the Code.

stated that "jeopardy ... did not attach" at the CINA proceeding. Apparently what the trial court in the present case meant was that the defendant Bowling was not in "jeopardy" in the sense that criminal sanctions could have been imposed upon him at the CINA proceeding. The trial court seemed to be of the view that, for the State to be collaterally estopped from relitigating in a criminal case an issue of ultimate fact which was resolved against it at an earlier proceeding, such earlier proceeding must also be a criminal case.

We shall assume arguendo that the CINA proceeding was entirely civil, that the only sanctions to which the defendant Bowling was potentially subject were civil ones relating to the loss of custody and money, and that no criminal sanctions could have been imposed upon him at the CINA proceeding.[9] Nevertheless, this would not prevent the application of collateral estoppel.

■ The civil character of the first proceeding does not make inapplicable the doctrine of collateral estoppel in a subsequent criminal case. *Yates v. United States,* 354 U.S. 298, 335–336, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957). For example, *United States v. Abatti,* 463 F.Supp. 596 (S.D.Cal. 1978), involved an indictment charging numerous counts of tax evasion. There had earlier been a civil tax proceeding in which the United States Tax Court had found that the defendant did not have income in excess of what had been reported. The United States District Court in *Abatti* pointed out that in the criminal trial the government "would be relitigating the very issue—Abatti's income—that the Tax Court considered and decided adversely to the government." *Id.* at 601. The district court, therefore, granted the defendant's motion to dismiss based upon collateral estoppel. *See also Washington Tp. v. Gould,* 39 N.J. 527, 189 A.2d 697

---

9. *See,* however, Code (1974, 1980 Repl.Vol.), § 3–831 of the Courts and Judicial Proceedings Article. *See also Wilson v. State,* 36 Md. App. 243, 373 A.2d 320 (1977).

(1963); Vestal, *Issue Preclusion and Criminal Prosecutions,* 65 Iowa L.Rev. 281, 337–340 (1979–1980).

No case has been called to our attention in which, under circumstances analogous to those here, a court has held that the government in a criminal prosecution could relitigate, against the same party, an ultimate factual issue decided adversely to the government by a final judgment in an earlier civil proceeding brought by the government.

Judge Davidson pointed out for the Court in *Powers v. State, supra,* 285 Md. at 283–284, 287, 401 A.2d 1031, that the primary purpose of applying collateral estoppel against the State in a criminal case is to protect an accused from the unfairness of having to relitigate an issue which has been determined in his favor. Judge Davidson also observed that another purpose of the doctrine is "to prevent relitigation which overburdens already crowded dockets and wastes public funds." *Id.* at 287, 401 A.2d 1031. In the instant case, application of the collateral estoppel principle furthers both of these purposes. At the CINA proceeding, brought by the State, the defendant Bowling, if he desired to avoid the civil sanctions to which he was potentially subject, was required to litigate fully the issue of whether he was guilty of the alleged sexual abuse. Virtually the entire circuit court trial upon the CINA petition was devoted to resolving the question of whether the State had proven Bowling guilty of these acts. The State, having been unsuccessful earlier in proving that Bowling was guilty of engaging in the alleged wrongful conduct, should not be given a second chance, thereby causing the defendant "to 'run the gantlet' a second time." *Ashe v. Swenson, supra,* 397 U.S. at 446, 90 S.Ct. at 1195, quoting *Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957).

JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE INDICTMENT. COSTS TO BE PAID BY CHARLES COUNTY.