489 A.2d 87

**Duck Jun LEE**

v.

**STATE of Maryland.**

**No. 964, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

March 15, 1985.

342

Harry J. Trainor, Jr., Landover (Greenan, Walker, Steuart & Meng, Landover, on brief), for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and John Severt, Asst. State's Atty. for Montgomery County, Rockville, on brief), for appellee.

Argued before GILBERT, C.J., and WILNER and ROBERT M. BELL, JJ.

WILNER, Judge.

In a multi-count indictment filed in the Circuit Court for Montgomery County, appellant was charged with two counts, each, of child abuse, third degree sexual offense, and battery. These charges were based on the underlying accusation that, at one or more times between December, 1977, and January, 1984, appellant had unlawful sexual contact with his daughter, M, and that at one or more times between June and December, 1983, he had unlawful sexual contact with his other daughter, T, both being minor children.

Appellant moved to dismiss the indictment on the ground of collateral estoppel. He averred that "the issue of whether sexual child abuse had occurred" had previously been litigated in a juvenile court proceeding to which he was a party, that the juvenile court had found insufficient evidence to support a finding of sexual child abuse, and that the State was precluded from relitigating the issue. The circuit court denied the motion and appellant brought this appeal. We shall affirm.

### (1) *Appealability*

■ Appellant's motion was grounded on the doctrine of collateral estoppel and did not mention, by name, the Constitutional prohibition against double jeopardy. It is clear, however, that, in a criminal case, the former is embodied within the latter, and the issue, therefore, *is* one

of double jeopardy. *Bowling v. State*, 298 Md. 396, 470 A.2d 797 (1984); *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Accordingly, although the order denying appellant's motion was of an interlocutory nature, under the "collateral order" doctrine it is immediately appealable. *Bowling, supra; Neal v. State*, 272 Md. 323, 322 A.2d 887 (1974); *Parrott v. State*, 301 Md. 411, 483 A.2d 68 (1984).

### (2) *Collateral Estoppel*

In 1976, appellant and his then-wife Judy separated. The two children of the marriage—M and T, then ages four and five—remained in the custody of their mother but visited with their father on weekends.

Some seven years later—just after Christmas of 1983—the children revealed to their mother certain episodes that had occurred during visits with appellant, extending back to 1977. As a result of those revelations, on February 2, 1984, juvenile petitions were filed in the District Court for Montgomery County, sitting as a juvenile court, alleging that the children were in need of assistance. Paragraph 3 of the petitions stated:

> "That the facts on which the allegation is based are as follows: [T] [and M] may be living in conditions endangering her physical well-being in that she has been sexually abused by her *father* during her visits with him ... in violation of [Md.Code Ann.Cts. & Jud.Proc. art., § ] 3–801E." (Emphasis added.) [1]

Attached to each juvenile petition was a petition for "continued detention or shelter care," the apparent purpose of which, in light of the fact that the children continued to

---

1. The wording of paragraph 3 of the petition dealing with M differed slightly. By apparent inadvertence, it omitted the word "father," emphasized in the quotation, but added, after the words "visits with him" the words "at his home." In light of what actually occurred at the juvenile court proceeding, these differences are inconsequential. The correct statutory reference is § 3–801(e), which defines a "child in need of assistance."

reside with their mother, was to provide a legal basis for denying visitation privileges to appellant. The petition relating to M averred that she

"was taken into custody as the result of certain facts and conditions that indicate that he [*sic*] may be a ... child in need of assistance for reason that [M] may be living in conditions endangering her physical and/or emotional well-being in that she has been *sexually abused* by her father during her visits with him at his home." (Emphasis added.)

The petition relating to T did not contain the phrase "sexually abused," but stated that "she has been the victim of *sexual misconduct* by her father during her visits with him at his home."

These petitions came on for hearing in the juvenile court on March 2, 1984—the same day the indictment in this case was filed. The juvenile court was aware of the criminal charges.[2]

All of the evidence presented in support of the petitions came from M and T. It was limited to the following: (1) from the time the children were small, appellant periodically kissed them with his tongue—a so-called "French kiss"; (2) he would occasionally come into the bathroom while they were bathing, and, on one or two occasions took a picture of them bathing; (3) on one occasion, he seemed concerned or interested in how M washed her "hiney" [*sic*] and asked her to demonstrate how she did it—he apparently thought she should use a washcloth instead of her hand; (4) he would sometimes have them sit on him, and would put his

---

**2.** Although the full record of the juvenile court proceeding that day is not in the record before us, it appears from some comments made that there was a third set of petitions involving appellant's youngest daughter, D, who was the product of a subsequent marriage. The allegations regarding D are not, of themselves, relevant to the issue now before us. They were, however, germane to the juvenile court proceeding. Apparently, appellant had been excluded from his home and from seeing D, and there was some discussion about finding a way to repair that situation. Partly in that context, counsel urged the court not to label appellant a sexual abuser.

hand inside their underpants and rub their hips or buttocks;[3] and (5) he would sometimes walk around with no clothes on. The children expressly denied that appellant had ever attempted to manipulate their genital areas or their breasts. Both said that they disliked their father's actions and tried to avoid or terminate these encounters. Appellant did not testify, and put on no defense.

At the conclusion of this evidence, appellant, though conceding that he had exercised poor judgment, argued that there had been no showing of child or sexual abuse; he asked the court "to make a finding based upon the testimony of the two girls that there has been no child abuse in this case." Counsel for the children seemed to agree that there had been no "physical abuse per se," but argued that appellant's conduct had amounted to "inappropriate sexual contact," an abuse of "his sexual role and theirs." Counsel for the mother argued that the evidence showed "physical as well as sexual abuse." Appellant's counsel mentioned the statutory definition of sexual contact (Md.Code Ann. art. 27, § 461) and argued again that the evidence failed to show it. Although he said he would not "totally disagree" with a finding that the children were in need of assistance "because of what is obviously a family problem of great magnitude," he asked the court "to clearly rule on the issue of sexual abuse." The county attorney—the moving party —responded, "it's a clear case where there has been some sexual abuse. Maybe not sexual abuse that we have seen in other cases in this Court, but the elements are there and I think on that basis they should be found as children in need of assistance."

Except for the disagreement between M and T mentioned in n. 3, *ante,* there never was any question as to whether appellant had done the things claimed by the children. As noted, he never denied the accusations. The issue before the juvenile court was whether, as a result of his having

---

3. T denied that appellant had ever done that to her, although M claimed to have seen him do it to T.

done those things and his disposition to *do* those things, the children fell within the statutory definition of children in need of assistance.

In that regard, and ever mindful that criminal charges were then pending against appellant, the court carefully abstained from making any clear determination whether appellant's conduct amounted to sexual or child abuse within the meaning of the criminal law. The court went on at some length, but the crux of its decision was this statement:

> "I was looking under 35A, 335[,] 464A, B, C,[4] and we're talking about degrees of sexual conduct under [art.] 27. *And I don't know whether the conduct of this father falls in that framework.* What I believe we have here is, thus far, inappropriate behavior on the part of the father toward his daughters of a sexual nature. And that is really inappropriate. Now one of the things, *whether this carries over into a criminal matter, it's a matter of intent, and at this stage we could only guess.*" (Emphasis added.)[5]

---

4. These references are to Md.Code Ann. art. 27, § 35A, which is the child abuse law, § 335 (incest) or § 335A (indecent exposure), § 464A (second degree sexual offense), § 464B (third degree sexual offense), and § 464C (fourth degree sexual offense).

5. The court expressed this point several times—that it was finding inappropriate sexual conduct and not criminal abuse. At one point, counsel said, "I don't mind that there be a finding that the children are in need of assistance. I'm concerned about labels as the reason for the child in need of assistance finding. Mostly because that I'm hoping that there's going to be some eventual steps toward resolution between Mr. Lee and the first Mrs. Lee. If we have a label of child abuse or something like that." The court responded:
> "My statement was that they are children in need of assistance because of inappropriate behavior on the part of the father of a sexual nature toward his children. Now that's not a child abuser as I, in looking down at 35 365, 464, 335, 464A, B or C of the criminal statute. I don't see that.... But they're here because of the conduct on his part, forget all about the sexual aspects of it. If it wouldn't have been—the inappropriate behavior because of abuse of the child—it isn't abuse. Now, I don't know whether it's a sexual abuse, but the way—one term. But the way in which it was done wasn't a sexual nature of the abuse itself. So that's all I am making a finding, that that's the basis."

The court's primary objective was to restore the family relationships that had been strained and, to some degree, severed, and to that end, it arranged for family counseling. In the meanwhile, based on the finding that appellant had engaged in inappropriate sexual conduct, it declared the children to be in need of assistance.

Appellant bases his claim of collateral estoppel on *Bowling v. State, supra,* 298 Md. 396, 470 A.2d 797, which has at least a surface similarity to the case at bar. A close examination of the facts and reasoning in *Bowling,* however; reveals a significant distinction between that case and this one.

In *Bowling,* a child accused her stepfather of sexually abusing her, and, upon that accusation, a petition was filed in juvenile court to have her declared a child in need of assistance. Apparently, the stepfather denied the factual accusations, for the Court of Appeals, in its Opinion, noted that "[t]he testimony at the hearing dealt almost exclusively with *whether or not the alleged incidents of sexual misconduct had actually occurred.*" (Emphasis added.) 298 Md. at 399, 470 A.2d 797. The juvenile court, after reviewing the evidence, concluded that it was *"not persuaded by a preponderance of the evidence that this sexual abuse did, in fact, take place."* (Emphasis in original.) *Id.* On that basis—*" 'because I do not feel the State has proven ... that case' "* (emphasis in original; *id.* at 400, 470 A.2d 797)—the court dismissed the petition.

Upon that record, the Court of Appeals concluded that the doctrine of collateral estoppel applied and served to prevent the State from proceeding with criminal charges of child and sexual abuse against the stepfather. The Court began its analysis, at 402, 470 A.2d 797, with the premise that

"[F]or the State to be precluded in a criminal trial from relitigating an issue resolved against it at a prior proceed-

ing, the following requirements ordinarily must be met. First, the earlier proceeding must have ended with a final judgment or 'final determination' of the issue.... Second, the defendant must have been a party to both proceedings.... Third, the resolution of the issue at the earlier proceeding cannot have been unnecessary or mere dicta; instead it must have been an ingredient or a basis of the decision.... [I]t must have been 'an issue of ultimate fact.' "

Applying the three-prong test, the Court concluded that (1) the CINA (child in need of assistance) proceeding was terminated by a final judgment, (2) the defendant was a party to that proceeding, and (3) whether he "committed the alleged sexual abuse was an ultimate issue of fact resolved against the State at the CINA proceeding. *The failure of the State to prove that Bowling committed the acts was the sole basis for the judgment dismissing the CINA petition.*" (Emphasis added.) *Id.* at 403, 470 A.2d 797. That was the basis for the Court's ultimate holding that collateral estoppel applied: "The State, having been unsuccessful earlier in proving that Bowling was guilty of engaging in the alleged wrongful conduct, should not be given a second chance, thereby causing the defendant 'to "run the gantlet" a second time.' " *Id.* at 405, 470 A.2d 797.

Unlike the situation in *Bowling*, neither the basic factual issue—whether the defendant committed the acts charged to him—nor the ultimate determination of the CINA petitions were resolved in appellant's favor. Indeed, the juvenile court here arrived at quite the opposite conclusion. Moreover, despite appellant's urgings to the contrary, the court did *not* acquit appellant of the charges of child and sexual abuse. It found an alternative basis for granting the petition, one that did not require a finding of child or sexual abuse. When the court's remarks are read as a whole, it seems clear that the court very carefully refrained from making any finding of "ultimate fact" with respect to

those charges, preferring to leave those issues to the criminal proceeding.

For these reasons, we find *Bowling* distinguishable, and conclude that the State is not collaterally estopped from proceeding with the current charges. The court did not err in denying appellant's motion to dismiss.

■ Although the issue is not directly before us in this appeal, we think it important in closing to note our concern over what appears to have been an entirely inappropriate use of CINA and shelter care petitions in this case. Unlike the situation in *Bowling*, these children—M and T—were not living with appellant; they resided with their mother and were not in need of assistance or shelter care by reason of their home environment. If the mother or the county department of social services perceived a need to suspend appellant's visitation privileges, which seems to have been the motivation behind these petitions, we see no reason why a normal equity petition would not have sufficed. Labeling these children as being in need of assistance or in need of shelter care seems to us to have been wholly unnecessary and wholly inappropriate. If juvenile court jurisdiction was thought desirable, it strikes us that the appropriate proceeding should have been under Cts. & Jud.Proc. art., § 3–831, where the court could have dealt with appellant without labeling the children.

ORDER DENYING MOTION TO DISMISS AFFIRMED; CASE REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS; APPELLANT TO PAY THE COSTS.