**UNITED STATES of America,**
**Plaintiff,**

v.

**Philip Adrian DREVETZKI.**

**No. 71 CR 171.**

United States District Court,
N. D. Illinois, E. D.

Jan. 28, 1972.

James Thompson, U. S. Atty., J. Fitzsimmons, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Michael A. Lowe, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

### Pre-Trial Motions

MAROVITZ, District Judge.

PHILIP ADRIAN DREVETZKI, is charged in the indictment in this case of violating 18 U.S.C. § 1621, the crime of perjury.

The present case arises out of Defendant's testimony at a previous trial, United States of America v. Philip Adrian Drevetzki, 70 CR 377 where Defendant was charged with unlawfully stealing from an interstate shipment in freight five cartons of work clothing valued in excess of $100.00, in violation of 18 U.S.C. § 659. During the trial the question arose whether the Defendant had made a statement to Special Agent John Chadwick admitting participation in the offense. On January 6, 1971, Defendant testifying under oath admitted that he had had a conversation with Agent Chadwick but denied that he had made any statement admitting involvement in or knowledge of the crime of stealing clothing from the interstate shipment. The agent was called to testify as to the conversation and contra-dicted Drevetzki's testimony. Drevetzki was subsequently acquitted by the jury of the interstate theft charges.

The Government now comes and claims that Drevetzki's testimony as to the statement to Agent Chadwick was false and now charges him in the present case with perjury.

The Defendant presents a multitude of pre-trial motions.

1) General Motion of Defendant to Dismiss the Indictment;

2) Motion of Defendant to Dismiss the Indictment on Grounds of Double Jeopardy and For Hearing in Connection with said Motion;

3) Motion for Additional Discovery and Inspection;

4) Motion for a List of Persons Who Have Knowledge of the Facts Alleged in the Indictment; Motion for the Names and Addresses of Potential Witnesses;

5) Motion for Production of Grand Jury Testimony;

6) Motion to Produce Evidence Favorable to the Defendant;

7) Motion to Preserve Evidence; and

8) Motion Requesting the Court to Order a Pre-Trial Conference.

### I.

█ █ In view of the fact that we find merit to Defendant's second contention that he is being placed in double jeopardy by this indictment, we will comment only briefly on the other motions. Suffice it to say that the law is contrary to granting any of the motions of Defendant save the second and we therefore deny them. (As to motion number 8 requesting the Court to order a pre-trial conference, the United States Attorney has indicated that he has no objection to such a conference. This point is, however, moot given the dismissal of the indictment.) The first motion regarding the vagueness of the indictment is without merit since the charges sufficiently apprise Defendant of the charges against him and is as specific

as is possible. The third motion regarding additional discovery and inspection is denied, the current law indicating that the Government need not supply the information requested. The fourth motion regarding the list of persons and potential witnesses requested, is denied since these are not items that the Government must supply. See Hemphill v. United States, 392 F.2d 45, 48 (8th Cir. 1968). The fifth motion requesting the production of Grand Jury testimony is denied given Defendant's failure to indicate with particularity the materiality of said testimony. Furthermore, such testimony is available only *after* the witness has testified at trial. Defendant's request for *all* evidence favorable to him, his sixth motion, is denied since it exceeds the limits of pre-trial discovery and, furthermore, the Government recognizes and indicates that it will comply with its obligations to supply that evidence which is statutorily available to Defendant.

## II.

We now turn to Defendant's motion to dismiss the indictment on the grounds of double jeopardy.

■■ The terms double jeopardy, res judicata and collateral estoppel are sometimes used interchangeably though they each have their own individual, precise meaning. Double jeopardy is a uniquely constitutional concept derived from the Fifth Amendment which states that " . . . nor shall any person be subject for the same offense to be twice put in jeopardy . . ." and res judicata and collateral estoppel both originally civil terms are but two sub-categories or manifestations of that concept. Res judicata refers to the preclusion of a *claim* or cause of action where that claim has been fully litigated and decided in a prior suit while collateral estoppel involves the preclusion of a claim where the material ·*issue* was litigated and decided in a prior suit though that prior suit may have involved a totally different cause of action. Judge Will in Palora v. Powers, 295 F.

Supp. 924 (N.D.Ill.1969) at 933 clearly defined the scope of collateral estoppel:

"The concept of issue preclusion developed largely in the context of civil litigation. It is designed, essentially, to prevent repetitious litigation of the same issue by the same parties. As it relates to civil actions, the concept of issue preclusion is in substance that any fact, question or matter in issue and directly adjudicated or necessarily involved in a determination of an action before a court of competent jurisdiction in which a judgment or decree is rendered on the merits, is conclusively settled by the judgment therein and cannot be relitigated in any future action between the parties or privies, either in the same court or a court of concurrent jurisdiction, while the judgment remains unreversed or unvacated by proper authority, regardless of whether the claim or cause of action, purpose or subject matter of the two suits is the same."

As will become evident it is the collateral estoppel branch of double jeopardy that we are concerned with in our cause.

■■ It is clearly established that this concept applies with equal validity to criminal as well as civil cases and that the retrial of *issues* adjudicated in a previous trial is as prohibited by the Fifth Amendment as retrial for the *same offense*. See Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948); United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916); Laughlin v. United States, 344 F.2d 187 (U.S.App.D.C.1965); United States v. Kramer, 289 F.2d 909 (2nd Cir. 1961).

In Ashe v. Swenson, *supra,* the Supreme Court's most recent consideration of collateral estoppel in criminal cases the Court said:

"Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary

system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161. Mr. Justice Holmes put the matter in that case, 'It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt.' 242 U.S., at 87, 37 S.Ct. 68. As a rule of federal law, therefore, '[i]t is much too late to suggest that this principle is not fully applicable to former judgment in a criminal case, either because of lack of "mutuality" or because the judgment may reflect only a belief that the Government had not met the higher burden of proof exacted in such cases for the Government's evidence as a whole although not necessarily as to every link in the chain.'" United States v. Kramer, 289 F.2d 909, 913.

Thus, questions of Fifth Amendment double jeopardy may appear in various shapes and forms in criminal cases. The purest and simplest instance of double jeopardy occurs where the individual is tried for the same offense a second time. Another instance involves retrial for an offense that arises out of a common operational fact previously litigated and decided. Such was the case in Ashe v. Swenson, *supra,* where three or four men robbed six poker players. The defendant was charged with having robbed one of the players and upon being acquitted of this charge was subsequently retried for robbing another of the poker players. The Supreme Court held that the prior acquittal determined the issue as to whether defendant had been present as one of the robbers and he therefore could not be tried again for robbing another of the poker players since both offenses arose out of one factual, previously determined issue.

Other types of double jeopardy cases involve retrial for lesser included offenses and trial on a conspiracy charge where the individual had been acquitted of the substantive offense.

The common denominator among all of these cases is that the subsequent charges revolve around and originate from a common set of facts or series of actions. Thus, a conspiracy charge emanates from the plan to commit a certain act and though a separate offense, is nevertheless inseparably intertwined with the substantive act. Likewise a lesser included offense partakes of the greater offense. The identifying characteristic of these cases is that the subsequently charged offense arises out of an act that was allegedly committed shortly before, at the same time or shortly after the previously charged offense.

A subsequent charge of perjury in regard to testimony relating to a prior offense, however, creates problems not present in the former type of case. The alleged offense occurs at trial, some time after the commission of the substantive act, and relates to rather than arises from that act. It therefore proves more difficult to discover whether indeed the acquittal of a defendant at a trial at which the perjured testimony was given fully determined and decided the issue of whether the defendant's testimony was indeed perjured since the charged offense rather than the issue of his credibility was directly in issue. Furthermore, an additional policy consideration is injected. As the court stated in Adams v. United States, 287 F.2d 701 (5th Cir. 1961) at 703:

"Two opposing policy considerations have weighed heavily in prior determinations of this problem. On the one hand the concern exists that allowing an acquittal to afford any sort of insulation for perjury will be giving defendants an uncontrollable license to testify falsely. The resulting detriment to the reliability of evidence and

more so, to the stability of the judicial process, would only be enhanced by the obvious fact that the more persuasively flagrant the defendant's fabrication, the greater his chances of total exoneration. This completes a vicious circle since the successful acquittal on the substantive offense would immunize him as to the very falsehoods which brought it about. On the other hand some apprehension exists that allowing prosecution for perjury will actually give the state a second shot at the defendant for the same wrong. The mere fact, this argument continues, that one charge relates to the doing of an act and the other to a denial of having done it, or to affirmative proof that it was not so done, is not sufficient basis on which to make a distinction. This is particularly true where the same or substantially the same evidence is presented in both cases."

The test in determining whether retrial is collaterally estopped by the determination of the same issue in a previous trial was enunciated in Ashe v. Swenson, *supra,* 397 U.S. at 444, 90 S.Ct. at 1194:

"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180. Any test more technically

restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal."

Applying this test to our case we find that the indictment for perjury is barred by the doctrine of collateral estoppel because the truth of the Defendant's testimony regarding his statement to the agent was fully litigated and decided if not explicitly and directly then surely implicitly and indirectly and that further a verdict of guilty of perjury would be inconsistent with the verdict of not guilty for theft.

Admittedly the issue directly decided in the earlier case was not whether Defendant told the truth about his statement to the agent but rather whether he stole the boxes of clothes. This Court also recognizes that this case is once-removed from the conventional post-acquittal perjury case such as in U. S. v. Williams, 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1951). The typical case of a subsequent perjury prosecution relates to false testimony regarding the actions for which the defendant was originally tried. In our case the government is not contending that the Defendant lied about his involvement in the theft, the basis of the original prosecution, but rather that he lied about the peripheral matter of his statement of admission to the agent. Granted that there is a distinction but it is a tenuous and anemic one at best.

Thus in view of the criteria set out above we believe that the finding of not guilty in the trial for theft is so inseparably intertwined with the issue of Defendant's veracity regarding his statement to the agent as to render any perjury charge regarding his testimony at trial about that statement in violation of the prohibition against double jeopardy. A subsequent prosecution to constitute double jeopardy need not be for the same offense as long as the determinative issue is the same in both cases. We must therefore isolate the deter-

minative issue in our case in order to decide whether the adjudication of that issue precludes the perjury charge.

The issue determined in the first trial was that Drevetzki did not steal the goods in question. Taking into consideration, as Ashe v. Swenson, supra prescribes, ". . . the record of [the] prior proceeding, . . . the pleadings, evidence, charge, and other relevant matter and . . . whether a rational jury could have grounded its verdict upon an issue other than that which defendant seeks to foreclose from consideration. . . ." we believe that a rational jury could not have found Defendant not guilty had they believed the agent's testimony rather than the Defendant's. The testimony of an F.B.I. agent regarding a statement of admission made by a Defendant is bound to have a profound effect on the minds of a jury. The fact that a jury found the Defendant not guilty in spite of that testimony indicates that they considered both statements and chose to believe Defendant's statement over that of the agent. A jury could not have reached its conclusion without considering that issue. The finding of not guilty is therefore the same as determining that the statement of admission was not made to the agent and that issue cannot be again litigated. Thus the perjury indictment fails the Ashe v. Swenson test. The indictment itself, in fact, concedes the criticality and centrality to the case of the alleged statement to the agent. On page 1 of the indictment it is stated:

. . . . . .

"3. During the course of the trial it became *material* for the court and jury to learn whether the defendant had made a statement to Special Agent John Chadwick and whether in that statement he had admitted participation in the offense."

Thus the government concedes that the issue was a determinative one and having been determined we cannot allow it to be litigated once more.

In a similar, though admittedly not identical case, the Fifth Circuit found that a subsequent trial for perjury that merely relied on previously litigated issues was in violation of the double jeopardy prohibition. The Defendant in United States v. Nash, 447 F.2d 1382 (1971) had been charged with stealing money from the mails and had claimed that she obtained the marked money from a coin machine and not from the mails. She was acquitted of that charge but the government subsequently prosecuted her for perjury contending that her testimony as to the source of the money was false since she could not conceivably have obtained the money from the coin machine. She was found guilty of perjury and she appealed.

The Court of Appeals reversed stating:

"Nevertheless, in our judgment the appellant in the perjury trial was 'subject for the same offense to be twice put in jeopardy', as interdicted by the Fifth Amendment.

"This conclusion is derived from formulae authoritatively prescribed for ascertaining whether the verdict at the second trial depends upon resolution of any matter previously tested and found in favor of the defendant when acquitted at the first trial. Double jeopardy is a constitutional bar not only to retrial for the same offense, but also to relitigation of adjudicated issues whether they emerge in trials for the same or distinct offenses. Cf. Ashe v. Swenson, 397 U. S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469.

"Of course, the Government did not have to prove that she had *not obtained* the coins as she explained, but it did have the burden of establishing that she had taken the letter containing the coins from the mail. The change machine explanation was part of her defense and had to be weighed by the jury. Consequently, it cannot have been simply a collateral issue. While she was under no obligation to prove that the coins had *not come* from the mail box, still when her story was adduced, it created a conflict with the Government's proof. There were but

two conflicting explanations of her possession to be considered. Thus, the jury 'necessarily' had to pass upon the truthfulness of her account. The issue was 'crucial' and once adjudicated, its redetermination in a trial for another offense is estopped."

Though in our case the perjury charged relates to an incident peripheral and tangential to the prior charged offense whereas in *Nash* the testimony related to a critical part of the offense itself the same formula nevertheless applies. Applied to this case the result derived is that the issue of whether the Defendant made an admission to the agent was "necessarily" adjudicated and a perjury prosecution cannot therefore be mounted.

 Our decision, then, distilled and summarized is that collateral estoppel applies to a perjury prosecution for testimony in a prior trial not only where the testimony relates to an issue that was an essential element of the crime itself but also where the testimony relates to any peripheral matters that must have been adjudicated and considered in order to reach the verdict; if a rational jury could not have found a defendant not guilty without having considered a crucial issue then that issue is to be considered determined for the purposes of collateral estoppel.

While "if at first you don't succeed try, try again" may be a lofty and worthy ideal for the general public it has no place in the area of criminal prosecution where that first attempt at success has fully and completely adjudicated the issues and where the second prosecution merely rehashes old evidence. To try again in a situation such as this would allow for the self-perpetuation and self-generation of endless litigation and would do violence to the concepts of res judicata and collateral estoppel. U. S. Deputy Attorney General Richard G. Kleindienst recently stated a similar view when he said:

"In the search for speedy justice, we must look beyond additional manpower and resources. We must ask ourselves whether all the cases now processed in Federal courts should continue to be entertained . . . Are there cases that are simply a rehash of cases already tried." Toward Speedy Justice, Trial Mag.; Nov.–Dec. 1971, p. 12.

This does not in any way imply that valid attempts at reprosecution for a separate offense or for non-adjudicated issues should not be mounted in the interest of justice and the pursuit of criminal elements. It simply means that the Court must be convinced that the indictment is composed of new unlitigated issues of offenses. Our case not being of such a nature the indictment is hereby dismissed.