470 A.2d 355

**Dennis Wayne MYERS, Sr.**

v.

**STATE of Maryland.**

**No. 1498, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Feb. 2, 1984.

George E. Burns, Jr., Asst. Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland on brief, for appellant.

Carmina Szunyog, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. of Maryland, M. Kenneth Long, Jr., State's Atty., for Washington County and John Salvatore, Former State's Atty., for Washington County on brief, for appellee.

Argued before LISS, BISHOP, and PINES, JOSEPH I. (specially assigned), JJ.

JOSEPH I. PINES, Special Judge.

Dennis Wayne Myers, Sr., after having been found not guilty of theft on December 14, 1981, in the District Court for Washington County, was tried and found guilty of perjury by a jury in the Circuit Court for Washington County on September 27, 1982 and sentenced to five years' imprisonment.

While "if at first you don't succeed, try, try again" may be a lofty and worthy ideal for the general public, it has no place in the area of criminal prosecution where the first attempt at success has fully and completely adjudicated the issues and where the second prosecution merely rehashes old evidence. *United States v. Drevetzki,* 338 F.Supp. 403 at 409 (N.D.Ill.1972).

The statement of charges against appellant in the District Court alleged that he "did steal one pair men's leather boots from King's Department store, the property of King's Department Store, having a value of less than $300.00 (total value $32.99)."

The indictment in the Circuit Court on the 14th day of December, 1981, alleged that Dennis Wayne Myers, Sr.:

[O]n his examination as a witness duly sworn to testify, in the case of State of Maryland vs Dennis Wayne Myers, Sr., ... before the District Court for Washington County ... charged with the crime of theft, was duly sworn ... unlawfully and falsely swore that he had purchased a pair of men's leather boots valued at $32.99, on October 17, 1981 prior to 1240 hours at King's Department Store, 835 West Hillcrest Road, Hagerstown, Maryland, and that he was wearing said boots when he was apprehended by the King's Department Store Security people on said date at approximately 1240 hours, the matters sworn to being material, and the testimony of the said Dennis Wayne Myers, Sr. being wilfully and corruptly false....

Succinctly stated, in the District Court the defendant was charged with the theft of the boots, and in the Circuit Court the defendant was charged with lying when he testified that he had purchased the boots.

On appeal, four questions were presented to this court for resolution:

1. Did the trial of appellant violate the prohibition against double jeopardy?
2. Did the trial court err in allowing the State's Attorney to refer in opening statement to a judge's remark in a prior case?
3. Did the court prejudicially reduce the effectiveness of defense counsel by repeatedly interrupting counsel during closing argument?
4. Was the evidence sufficient to prove perjury?

In considering the first question, broadly presented to us as a double jeopardy question, we shall reverse, thereby obviating the necessity of addressing the remaining questions.

█ While double jeopardy, res judicata and collateral estoppel are often used interchangeably, each has its own

separate meaning. Double jeopardy is derived from the Fifth Amendment which states ". . . nor shall any person be subject for the same offense to be twice put in jeopardy . . ." and res judicata and collateral estoppel, of civil origin, are two sub-categories or manifestations of that constitutional provision. Res judicata refers to the preclusion of a claim or cause of action where that claim has or could have been fully litigated and decided in a prior suit. Collateral estoppel involves the preclusion of a claim where the material *issue* was litigated and decided in a prior suit though that prior suit may have involved a totally different cause of action. Accordingly, we more precisely identify the question before us as one concerned with collateral estoppel and not double jeopardy as presented.

In reversing, we are not unmindful of the complexity of the problem, so well articulated in *Adams v. United States,* 287 F.2d 701 (5th Cir.1961), wherein the Court stated:

Two opposing policy considerations have weighed heavily in prior determinations of this problem. On the one hand the concern exists that allowing an acquittal to afford any sort of insulation for perjury will be giving defendants an uncontrollable license to testify falsely. The resulting detriment to the reliability of evidence and more so, to the stability of the judicial process, would only be enhanced by the obvious fact that the more persuasively flagrant the defendant's fabrication, the greater his chances of total exoneration. This completes a vicious circle since the successful acquittal on the substantive offense would immunize him as to the very falsehoods which brought it about. On the other hand some apprehension exists that allowing prosecution for perjury will actually give the state a second shot at the defendant for the same wrong. The mere fact, this argument continues, that one charge relates to the doing of an act and the other to a denial of having done it, or to affirmative proof that it was not so done, is not sufficient basis on which to make a distinction. This is particularly true where the same or substantially the same evidence is presented in

both cases. Res Judicata in Successive Criminal Prosecutions, 24 Brooklyn L.Rev. 12 (1957). This, we see, approaches closely whether acknowledged or not, an intuitive feeling akin to double jeopardy despite the fact that the two are distinct.

■ The question, as we perceive it, narrows down to whether the prosecution for the perjury crime required relitigation of the issues which had already been judicially determined in the trial of the theft crime. Thus it becomes necessary to decipher what facts were or should have been determined when the District Court judge acquitted the defendant of the theft charge.

At the conclusion of the District Court trial the judge said:

> All right . . . Mr. Myers in view of the testimony of you and your wife that you went out to the store earlier in the day and bought these boots, I am going to give you the benefit of the doubt and find you not guilty. You swear that you got these earlier in the day and that you did so and had paid for them when Miss Gibson stopped you out on the parking lot. I am going to take your word for it at this time. Mr. Long, I am very much upset about them lying to you under oath here. I would suggest that you take these slips, check with the store to find out, and they can find out. I see . . . a $3.45 item above here, then a $32.99, then a $1.65, $34.64, and $40.00 paid, and $5.36 change. I'd suggest that you check them with the slips on October 17, find out if this $32.99 plus tax item was purchased after the other ones. If they were, I would like both Ms. Myers and Mr. Dennis Myers charged with perjury. I have a good idea here that he went back later on and bought a pair of shoes, a pair of boots in this way and if they did do it . . ., I want charges brought.

The central issue which the District Court judge decided in rendering a general verdict of not guilty was whether or not defendant Myers *stole* the boots. Upon the record of the District Court proceedings that is available to us, the trier of

fact, in acquitting the defendant, relied on the truth of the defendant's testimony and the authenticity of the sales receipt produced on behalf of the defendant to substantiate his testimony that the boots were purchased.

In the perjury trial, the jury was similarly required to assess the veracity of the defendant's testimony and the authenticity of the sales receipt. It therefore becomes apparent that the jury verdict in the perjury trial necessarily depended on resolution of the same issue which had been tested and found in favor of the defendant when he was acquitted at the theft trial.

Upon examination of the records of the theft and perjury trials, one cannot escape the conclusion that the perjury indictment must be considered as an effort to relitigate the theft charge. The State seeks to avoid this fact on grounds that are unrealistic.

The State, while it had available to it a transcript of the proceedings of the theft trial in the District Court, did not introduce it in the perjury trial in the Circuit Court. Instead, the State chose to rely largely on the recollection of the Assistant State's Attorney who prosecuted the theft case, to recount the evidence of that trial in the perjury trial. It is apparent that the principal difference between the two trials was the additional evidence adduced at the perjury trial, that the sales receipt which the defendant introduced at the theft trial was for goods purchased at the store several hours after the defendant was apprehended and charged with the theft of the boots. This additional evidence could have been available to the State at the time of the theft trial if the State had requested a short postponement to verify the validity of the sales receipt.

At the perjury trial, the Assistant State's Attorney, over objection, was permitted to recount the former testimony of the State's witnesses in the District Court. He testified that the King's Department Store Security Officer, Ms. Sheri Gibson, had testified that the defendant entered the Shoe Department of King's Department Store, took his shoes off,

slid them under a shoe display, took a pair of work boots, put them on, and walked out of the store without paying for them. As a result, she took the defendant into custody on the store parking lot. The Assistant State's Attorney then related how the defendant, after having an oath administered to him, testified to the purchase of the boots and to the introduction into evidence of a sales receipt which purported to represent a purchase of boots for $32.99 from King's Department Store on that day.

Having determined that a pivotal point in the District Court acquittal was the sales receipt, the State, in the perjury trial, for the first time undertook to prove that the sales receipt was in fact evidence of a similar purchase at King's Department Store, made hours after the defendant had been apprehended for the theft of the boots.

To solidify its premise that the sales receipt in evidence did not relate to the boots alleged to have been stolen, the State called the Office Manager of King's Department Store to the witness stand.

She testified that she had reviewed the King's Department Store register tapes for the day in question, specifically looking for the transaction purportedly covered by the sales receipt in evidence. She explained that the store tapes reflected that she had emptied or "picked" the cash register at 3:30 p.m. on that day and that the sales receipt in evidence reflected a transaction which was completed *after* that time. Since the defendant had been apprehended for theft at approximately 12:30 p.m. on that date, the State theorized that the receipt was not related to the purported purchase of the boots earlier that day as maintained by the defendant.

She further noted that the transaction number and cash register number were missing from the bottom corner of the sales receipt, having been torn off subsequent to the District Court trial, admittedly while in the possession of either the King's Department Store employees or the Washington County Police Investigator who shared custody of the re-

ceipt from the time of the District Court theft trial until the Circuit Court perjury trial.

She testified that when she first saw the register receipt produced on behalf of the defendant, *two months after* the District Court trial, she immediately recognized the receipt as being from King's Department Store cash register number three; however, in September 1982, at the Circuit Court trial, the receipt had somehow become obliterated to the point where the store and transaction number had become illegible. After the receipt was introduced into evidence at the District Court theft trial, neither the defendant nor his representatives had access to or custody of the sales receipt.

Substantially, these are the facts upon which we are asked to sustain the perjury conviction.

We have examined the records of the theft and perjury cases in the light of the enunciation in the oft-quoted landmark case, *Ashe v. Swenson,* 397 U.S. 436 at p. 444, 90 S.Ct. 1189 at p. 1194, 25 L.Ed.2d 469 (8th Cir.1970):

> The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism, and rationality.

While the State vigorously contends that the new and additional evidence relating to the sales receipt was "much more extensive" in the perjury trial and therefore supplied the foundation for a guilty verdict, the ready answer is contained in *Harris v. Washington,* 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971), where the Supreme Court held that collateral estoppel "applies irrespective of whether the jury considered all relevant evidence and irrespective of the good faith of the State in bringing successive prosecution." 404 U.S. at 56–57, 92 S.Ct. at 184. The holding in that case established that collateral estoppel applies, not only where there is no reason to question the validity of a jury's finding of fact, but also where the validity of the jury's findings is questionable because it was not permitted to consider all of the relevant evidence.

*United States v. Nash,* 447 F.2d 1382 (4th Cir.1971), is comparable to the case under consideration. In that case, the defendant was convicted of perjury founded on testimony given by her in a prior criminal trial for a postal violation. The defendant was indicted for stealing a letter from a mail box. Postal inspectors testified that they had placed in the box a letter containing three 25-cent pieces affixed to a piece of cardboard, two dollar bills, and a letter, all marked. A fluorescent powder had been sprinkled on the bills and cardboard. They further stated that, from a hidden observation station, they saw her take the envelope from the mail box. Immediately, they followed her into the ladies rest area and, upon a search of her person, discovered the marked quarters. At trial, the defendant testified that she had not taken the letter, having procured the three quarters from a dollar-changing machine. The jury acquitted her of the mail theft charge. Subsequently, she was indicted for perjury in the mail theft trial.

At the perjury trial, the prosecution contended that the evidence demonstrated that the defendant could not possibly have received the 25-cent pieces from the change machine. The interval between the time when the inspectors saw her remove the test envelope and the time she was searched did not allow her the opportunity to obtain the marked quarters as change from the machine. Further, the government introduced evidence that the marked quarters she claimed to have received from the machine could not have been quarters deposited for change, because the latter cannot be recycled by the machine into change for dollars. The jury returned a verdict of guilty.

The United States Court of Appeals, under these facts, vacated the verdict, stating:

> Double jeopardy is a constitutional bar not only to retrial for the same offense, but also to relitigation of adjudicated issues whether they emerge in trials for the same or distinct offenses. *Cf. Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 239, 92 L.Ed.

180 (1948), instructs that the determination "depends upon the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial." This distillation precipitates what "at each trial was crucial to the prosecution's case and which was *necessarily adjudicated* in the former trial." If it is identical the Government is estopped by the prior determination from proceeding with the second prosecution.

In confirming and enlarging on the point, *Ashe v. Swenson, supra,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), held that the double jeopardy clause embodies the rule of collateral estoppel, elaborating in this way:

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. * * * " [397 U.S.] at 443, 90 S.Ct. at 1194.

" * * * Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." [397 U.S.] at 444, 90 S.Ct. at 1194.

Following the prescriptions in *Sealfon* and *Ashe,* we conclude that the jury in the first case undoubtedly passed

upon the believability of Estelle Nash's statements made under oath. The jury may have been in error, but certainly it appraised the defendant's credibility. It is inconceivable that there would have been an acquittal if the jury had not accorded truth to her testimony.

Of course, the Government did not have to prove that she had *not obtained* the coins as she explained, but it did have the burden of establishing that she had taken the letter containing the coins from the mail. The change machine explanation was part of her defense and had to be weighed by the jury. Consequently, it cannot have been simply a collateral issue. While she was under no obligation to prove that the coins had not *come* from the mail box, still when her story was adduced, it created a conflict with the Government's proof. There were but two conflicting explanations of her possession to be considered. Thus, the jury "necessarily" had to pass upon the truthfulness of her account. The issue was "crucial" and once adjudicated, its redetermination in a trial for another offense is estopped.

Similarly, in *United States v. Drevetzki,* 338 F.Supp. 403 (N.D.Ill.1972), the government indicted the defendant for perjury after the defendant was found not guilty of theft. During the theft trial, defendant denied that he had made a statement to a government agent admitting participation in the offense. Defendant was acquitted of theft and he was subsequently indicted for perjury in denying the statement to the agent.

The court, in analyzing the subsequent indictment for perjury after acquittal of the theft, stated:

A subsequent charge of perjury in regard to testimony relating to a prior offense, however, creates problems not present in the former type of case. The alleged offense occurs at trial, some time after the commission of the substantive act, and relates to rather than arises from that act. It therefore proves more difficult to discover whether indeed the acquittal of a defendant at a trial at which the perjured testimony was given, fully determined

and decided the issue of whether the defendant's testimony was indeed perjured since the charged offense rather than the issue of his credibility was directly in issue.

Applying this test to our case we find that the indictment for perjury is barred by the doctrine of collateral estoppel because the truth of the defendant's testimony regarding his statement to the agent was fully litigated and decided if not explicitly and directly, then surely implicitly and indirectly, and that further a verdict of guilty of perjury would be inconsistent with the verdict of not guilty for theft.

Our decision, then, distilled and summarized is that collateral estoppel applies to a perjury prosecution for testimony in a prior trial not only where the testimony relates to an issue that was an essential element of the crime itself but also where the testimony relates to any peripheral matters that must have been adjudicated and considered in order to reach the verdict; if a rational jury could not have found a defendant not guilty without having considered a crucial issue, then that issue is to be considered determined for the purposes of collateral estoppel.

The Court of Appeals, in *Powers v. State,* 285 Md. 269, 401 A.2d 1031 (1979) dismissed the remaining indictments charging the defendant with armed robbery of three victims at the same time and place, after a jury had acquitted the defendant of robbing two of the victims and was unable to agree on a verdict charging him with robbery of the third victim. Judge Davidson, reasoning for the Court that the only conceivable issue before the jury was whether the accused was one of the robbers, invoked the doctrine of collateral estoppel, and concluded that "... more precisely the doctrine's purpose is to avoid compelling relitigation of a fact material to the question of innocence when it appears substantially certain that a jury has already decided that fact in the accused's favor."

Subsequently, in *Wise v. State,* 47 Md.App. 656, 425 A.2d 652 (1981), where the defendant was tried and convicted of

first degree murder after being acquitted of conspiracy to commit the murder of the same victim, the Court of Special Appeals sustained the murder conviction and arrived at the conclusion that although the two factfinders in the conspiracy and the murder cases were permitted to view and hear some of the same factual evidence, the "ultimate facts" which they were to decide were *entirely different.*

Judge Lowe, in *Wise,* after summarizing the applicable law of other jurisdictions and our Court of Appeals, stated:

> By blending the key clauses of these dissertations, we condense them to a workable rule that fully supports the anti-harassment function of collateral estoppel. When it appears substantially certain that a jury has already decided a fact essential to conviction in the accused's favor, "that particular fact" which was "necessarily determined" may not be relitigated at a subsequent trial for a separate crime.

The District Court judge in the case before us, in acquitting the defendant of theft, *accepted* the defendant's account of the purchase of the boots. The judgment of acquittal was based on a general verdict. The judge's decision may have been erroneous, but he decided the "ultimate fact" that the defendant did not steal the boots. The jury in the perjury case, in order to find the defendant guilty, necessarily had to arrive at the inconsistent factual conclusion that the defendant stole the boots.

As Judge Friendly pointed out in *United States v. Kramer,* 289 F.2d 909, 916 (2d Cir.1961):

> ... The Government is free, within the limits set by the Fifth Amendment, ... to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may not prove the new charge by asserting facts necessarily determined against it on the first trial, *no matter how unreasonable the Government may consider that determination to be.* (Emphasis in original)

We conclude that the ultimate issue of fact having been determined in the District Court, it cannot be relitigated in the Circuit Court. The subsequent prosecution for perjury is therefore barred.

JUDGMENT REVERSED. COSTS TO BE PAID BY WASHINGTON COUNTY.