501 A.2d 881

**Waddell George DUNN**

v.

**STATE of Maryland.**

**No. 133, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 17, 1985.

Steven M. Jacoby, Hyattsville, for appellant.

Stephanie J. Lane, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Arthur A. Marshall, Jr., State's Atty.

for Prince George's County and Thomas A. McManus, Asst. State's Atty. for Prince George's County on the brief, Upper Marlboro), for appellee.

Argued before ALPERT, BLOOM and ROBERT M. BELL, JJ.

ALPERT, Judge.

Originally, the appellant, Waddell George Dunn, was charged with first degree murder. On May 25, 1982 appellant was given a six year suspended sentence, with five years probation, after his plea of guilty to an amended charge of assault with intent to maim was accepted by The Honorable Audrey E. Melbourne of the Circuit Court for Prince George's County. On March 14, 1984, the appellant was charged in the District Court for Prince George's County with carrying a concealed deadly weapon, in violation of Article 27, Section 36 of the Annotated Code of Maryland, 1957 edition, as amended. He appeared for trial, with counsel, in May, 1984, on that charge. Upon a Motion to Suppress made at that trial, the knife seized from appellant by Corporal G.A. Groves of the Prince George's County Police Department was suppressed and the appellant was acquitted. The knife was later disposed of by the police.

The appellant was subsequently charged with violating his probation. His probation officer alleged that he violated the following conditions:

Condition No. 4—in that he was arrested and charged on March 14, 1984, with deadly weapon—concealed, Case No. 005033E0....

Condition No. 3D—In that Mr. Dunn was arrested and charged in P.G. Co. with a deadly weapon [on June 1, 1984].

On or about October 16, 1984, the probation agent filed an additional report for reason that, "[o]n September 11, 1984, Mr. Dunn appeared in Prince George's County District Court. At that time Mr. Dunn was not guilty." The agent further related that, in view of the acquittal, that she was

not "requesting any action on Conditions Nos. 4, 8 and 3D." In other words, the probation agent was not pressing the "deadly weapon" charge. The issue that spawned this appeal appears by agreement to be "whether or not the defendant—there was evidence to believe that the defendant had in his possession a dangerous and deadly weapon, specifically a knife...." That is how the prosecutor below characterized the alleged violation of probation. Defense counsel below, while stating that he was probably 95% in agreement with the prosecutor's characterization, further stated: "We are basically down ... to whether or not Mr. Dunn violated his probation by violating the laws of the State of Maryland by possessing a concealed deadly weapon under Article 27, Section 36...."

After a hearing held on January 17, 1985, in the Circuit Court for Prince George's County, Maryland, before The Honorable Audrey E. Melbourne, the court revoked his probationary status and reinstated the originally suspended sentence of 6 years incarceration with credit for 12 days served. A timely appeal was noted.

Appellant contends that the trial court erred because:

1. The State failed to prove that the knife in question was not a penknife and therefore did not meet its burden of proving it was a dangerous weapon.

2. The trial court was barred by the doctrine of collateral estoppel from finding the appellant in violation of probation because he had previously been found not guilty of the concealed weapon charge.

3. The trial court did not advise the appellant of his personal right of allocution, nor did it afford him that right before sentence was imposed.

1.

■ Appellant argues that the court erred in finding appellant violated his probation by possession of a dangerous weapon without an affirmative showing that the knife was not a penknife without a switchblade, which is specifi-

cally exempted from the statute. The statute, Art. 27, Sec. 36(a), provides:

> Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon, chemical mace or tear gas device openly with the intent or purpose of injuring any person in any unlawful manner, shall be guilty of a misdemeanor.

Appellant relies in large part upon the case of *Mackall v. State*, 283 Md. 100, 387 A.2d 762 (1978) in support of his contention that because the State failed to meet the burden of proof imposed by the statute, he should not have his probation revoked. *Mackall* involved a criminal prosecution for violation of Md.Ann.Code, art. 27 § 36(a), the same statute under which appellant under which appellant here was originally tried in the District Court. The *Mackall* court held that the State there had an affirmative duty to prove that the knife that *Mackall* was carrying was not a type specifically excepted by the statute, *i.e.*, a penknife without a switchblade. Appellant contends "that the court ignored the fact that the possession of such a weapon has been specifically allowed by the legislature of the State of Maryland and by the case law from the Court of Appeals." The "case law" relied upon by appellant is a footnote wherein the Court of Appeals stated:

> "Penknife" is not defined in the statute. Even if the General Assembly had the dictionary definition in mind when it first enacted the statute in 1886, this concept of a "penknife" had obviously changed when the exception was amended to "penknife without switchblade." Penknives today are commonly considered to encompass any knife with the blade folding into the handle, some very large.

Appellant's argument is misconceived and misdirected. Whether the knife he was carrying when arrested by Cpl.

Groves was a penknife within the meaning of art. 27, § 36(a) is of significance only with respect to Condition No. 4 of his probation. If it was a penknife, appellant would not have been guilty of the crime of carrying a concealed dangerous weapon and thus would not have been in violation of the probation condition that he obey all laws.

Even a penknife, however, can be and all too frequently is used as a weapon—the larger the knife, the more dangerous the weapon. Likewise, many other objects, tools, or implements that are not weapons per se can be dangerous weapons if used as such. A hatchet in the hands of a boy scout chopping kindling for a campfire is a useful tool; that same hatchet in the hands of a thug lurking in a dark alleyway and awaiting the approach of an unarmed pedestrian is a dangerous weapon indeed. A penknife being used to trim a pencil is a useful implement; that same knife directed at someone's throat is a deadly weapon. And, as was pointed out in a colloquy between Judge Melbourne and defense counsel, a piece of string, or a telephone cord, or a pen, or a fingernail file could become a dangerous weapon, depending upon how it is used.

The question before us, therefore, is not whether the State met its burden of proving that appellant's knife was not a penknife, but whether Judge Melbourne erred in determining that the knife was a dangerous weapon at the time, in the place and under the circumstances of its being taken from appellant by Cpl. Groves.

Whether an object that is not a weapon *per se* is used, carried or possessed as a weapon on a particular occasion depends upon the surrounding circumstances. If the object, although normally a tool, is closely akin to a weapon, as a knife or an axe, far less proof should be required to persuade one of its character as a weapon on a given occasion than if the object bears little or no resemblance to traditional weapons, as the fingernail file, pen, telephone cord, or piece of string mentioned in the colloquy between Judge Melbourne and defense counsel. With that in mind,

we now look to the circumstances surrounding appellant and his knife on the occasion of his arrest.

Corporal Groves of the Prince George's County Police Department testified that he first became acquainted with Waddell George Dunn at approximately 11:45 A.M. on May 14, 1984, when he saw the appellant in front of 1511 Madison Street, Hyattsville, Prince George's County, Maryland (the Chillam Heights Apartments). Corporal Groves had responded to the scene "in reference to an alleged breaking and entering in progress...." He was advised by the maintenance man that "there was a vacant apartment, Apartment 104, at 1511 Madison Street, and he went to check the building and the apartment since it was still vacant and he couldn't get inside the apartment because the lock was broken on the outside." The maintenance man further related to Corporal Groves that he had seen a tall black man with long hair actually inside the apartment without permission. After a three-to-four minute search, Corporal Groves found a young man, who fit the description given by the maintenance man, "to the right of the building in the yard." It was none other than the appellant.

Upon making a weapons search, the officer noticed a bulge in the appellant's left rear pocket, from which he removed a folded knife that he described as having a handle five inches long and a four-and-a-half inch blade that locked into position when opened. The knife itself had been disposed of by the police department, but Cpl. Groves not only gave a detailed description of the knife but also furnished a drawing of it.[1]

Taking into account the type and size of the knife, so closely akin to a dirk or dagger when open, as well as the manner in which it was being carried by one having no work-related reason for being in the vicinity and no apparent need or use for the knife as a tool at that time and

---

**1.** No objection was made to the description or to the admissibility of the drawing.

place, the circumstances were such as to give rise to a reasonable inference that the knife was being carried as a weapon and not a tool. And if the knife was a weapon, it was obviously a dangerous one. Accordingly, we hold that Judge Melbourne was not clearly erroneous in finding, under the totality of the circumstances, that appellant had violated a condition of his probation by possessing a dangerous weapon without permission from his probation officer.

2.

Appellant asserts that the trial judge was barred by the doctrine of collateral estoppel from finding the appellant in violation of his probation based on charges of which he was earlier acquitted. Appellant's argument is based on the erroneous assumption that his probation was revoked because he was carrying a concealed dangerous weapon—a charge of which he was earlier acquitted. As we observed in part "1" of this opinion, appellant's probation was revoked for failure to obey a condition of probation that was independent of the criminal charge of which he was acquitted. Even if that were not the case, we still hold appellant's argument to be without merit.

While the doctrine of collateral estoppel is applicable to criminal cases as a matter of common law, *Bowling v. State,* 298 Md. 396, 401, 470 A.2d 797 (1984), and the principle is embodied in the fifth amendment prohibition against double jeopardy, *Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970), it has never been held to apply to revocation of probation proceedings. *See Scott v. State, infra;* 76 A.L.R.3d 564, Probation Revocation—Following Acquittal. *See also Clipper v. State,* 295 Md. 303, 313, 455 A.2d 973 (1983) ("there is no double jeopardy protection against revocation of probation and the imposition of the original sentence.") The reason for this is due to the fundamental difference between the nature and levels of proof in a criminal proceeding and a revocation of probation hearing.

[A] proceeding for revocation of probation is not one of formal procedure 'either with respect to notice or specification of charges or a trial upon charges. The question is simply whether there has been an abuse of discretion and is to be determined in accordance with familiar principles governing the exercise of judicial discretion.'

*Scott v. State,* 238 Md. at 272, 208 A.2d 575.

The procedural protections afforded a probationer at a revocation of probation hearing are not equivalent to those accorded at a criminal trial. Formal procedures and the rules of evidence are not employed. Finally, before probation may be revoked, the trial court need only be reasonably satisfied that there was, in fact, a violation of probation.

*Dean v. State,* 291 Md. 198 at 202, 434 A.2d 552 (1981).

The cases cited by appellant, discussed below, involve collateral estoppel challenges not in subsequent revocation of probation hearings, but in subsequent criminal prosecutions. This distinction is fundamental. For instance, in *Bowling v. State,* 298 Md. 396, 470 A.2d 797 (1984), the court held the State was collaterally estopped from prosecuting the defendant on charges of child sexual abuse after a trial court dismissed an earlier civil proceeding against the defendant (Child in Need of Assistance Petition) for failure of the State to satisfy the burden of proof. And, in *Myers v. State,* 57 Md.App. 325, 470 A.2d 355 (1984), this court held that the doctrine of collateral estoppel barred a subsequent prosecution of a defendant for perjury based on his testimony given at his theft trial where he was acquitted.

In *Stevens v. State,* 34 Md.App. 164, 366 A.2d 414 (1976), we held that collateral estoppel protects an individual from being placed in new peril on different charges after ultimate and unquestioned fact-finding on an earlier charge which would of necessity negate guilt at a subsequent *trial* of factually related though legally distinct charge (emphasis added). In the appellant's case, however, as in all revoca-

tion of probation situations, the law does not consider a resentencing proceeding to be of the same nature as a subsequent criminal trial, with its implications of former jeopardy. *Scott*, 238 Md. at 265, 208 A.2d 575.

The leading case on this point, *Scott v. State*, 238 Md. 265, 208 A.2d 575, is factually analogous to the case at hand. Defendant Scott was charged with assault with intent to rape, alleged to have been committed while he was on probation for robbery. Because certain inculpatory evidence was kept from the jury based on evidentiary rulings, Scott was acquitted. Subsequently, the trial judge revoked Scott's probation for violating the condition of his probation that he "shall conduct himself in a law abiding manner." Relying heavily on hearsay evidence, the judge reinstituted the original sentence, saying:

> I will not comment on the verdict of the jury. But, I do know that there was certain proffered evidence, and important evidence, which the jury did not hear, and which it could not hear under the rules of evidence. *I can not help but believe, in my own mind, that regardless of the technical rules of evidence which apparently resulted in the verdict of not guilty, plus the skill of your counsel, that you actually did commit this one act,* the assault with which you were charged in two counts. I can not fulfill my obligation to the public by allowing you to go free, having this knowledge in my mind that the jury could not hear.

*Id.* at 272, 208 A.2d 575 (emphasis added).

Thus, the *Scott* court's approval of the trial judge's conduct makes clear that a defendant's acquittal of criminal charges does not estop the State from instituting parole or probation revocation proceedings based on the conduct which formed the basis for the criminal charge, even if such evidence was insufficient to support a conviction. *Id.* Under *Scott*, it was properly within the sentencing judge's discretion to consider the alleged violation of Md.Ann.Code, art. 27, § 36, Carrying or Wearing a Concealed Weapon, in revoking appellant's probation, even though, like in *Scott*,

the defendant was acquitted of the charge and the physical evidence of the knife was suppressed.

The trial court did not err in finding that the District Court acquittal did not bar a prosecution for violation of probation arising out of the same conduct which precipitated the District Court prosecution.

### 3.

Preliminarily, appellee asserts that this court should not review the issue of appellant's right to allocution guaranteed in Rule 4–342(d) (formerly Maryland Rule 772(d)), as the issue was not preserved for appeal by the proper objection below. Maryland Rule 1085. It is clear from the record that no objection was made. Ordinarily, appellant would be estopped from raising this issue on appeal. Rule 1085. *We hold that the provisions of Maryland Rule 4–342(d) are mandatory and are not waived by mere failure to object at the time of trial. Dishman v. State,* 45 Md.App. 236, 241, 413 A.2d 565 (1980).

Recently, in *Lyles v. State,* 63 Md.App. 376, 383–84, 492 A.2d 959 (1985), we held that:

> The requirements of Maryland Rule 4–342(d) (formerly Maryland Rule 772(d)) are mandatory.... Although the court did hear from the appellant's counsel, the rule is clear that the appellant must be afforded an opportunity, both personally and through counsel. Failure to afford the opportunity, personally, is error, the proper remedy for which is remand for resentencing.

As the rule provides, "before imposing sentence, the court *shall* afford the defendant the opportunity, personally and through counsel, to make a statement and present information in mitigation of punishment." (emphasis added). Additionally, it is clear that since the court could cause the execution of a lesser portion of the sentence, art. 27, § 642, allocution at a probation revocation hearing must be afforded. *Sellman v. State,* 47 Md.App. 510, 512–13, 423 A.2d 974, *cert. denied,* 290 Md. 720 (1981).

■ Appellee asserts that the trial judge complied with the dictates of Rule 4–342(d); however, neither the record nor the law support its position. The record is totally devoid of any evidence that defendant was ever afforded his right to allocution. Appellee in its brief asserts that the trial judge, "engaged appellant in a dialogue about his placement on probation, inquired of the parties whether there was anything further, and entertained the recommendations of opposing counsel." The following dialogue is submitted by the State as evidence that the defendant was afforded his right to allocution.

THE COURT: I point out to you, Mr. McGann, that at the time I took his Alford plea the State had amended a murder charge to assault with intent to maim and when this member of the Bench had agreed to place him on probation that I did tell him that if there's any violation whatsoever the Court would promise under checking box Roman numberal IV he would serve his sentence. Do you want to confer with him as to whether or not the Court told him that?

(Thereupon, a conference was held at the trial table between Mr. McGann and Mr. Dunn.)

MR. McGANN: He says the Court told him that, Your Honor.

THE COURT: What?

MR. McGANN: He says he thinks he remembers that. If Your Honor wants to interrogate him further on that.

THE COURT: What did I tell you when I placed you on probation, sir, and I told you I was going to check box IV? What did I tell you that meant?

MR. DUNN: Your Honor told me I was to make sure I don't violate my probation.

THE COURT: Or what would happen?

MR. DUNN: Or I might get sentenced.

THE COURT: What?

MR. DUNN: Or I might get sentenced.

THE COURT: You might get?

MR. DUNN: I will get sentenced, Your Honor.

THE COURT: That's more like it.

Anything further?  Mr. McManus?

MR. McMANUS: The State merely asks that the original sentence be ordered into execution, Your Honor.  We will submit on that.

Plainly, the defendant was not "personally afforded the opportunity to make a statement and present information in mitigation of punishment." Rule 4–342(d).  Defendant was merely answering a question of the judge, not pleading his case—hardly sufficient to constitute compliance with the rule.  Appellee's contention plainly contravenes the rule that a trial judge should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing. *Green v. United States*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961), interpreting Federal Rule of Criminal Procedure 32(a), after which the Maryland rule is largely patterned. *Dishman, supra*, [45 Md.App.] at 241, 413 A.2d 565.

The mandates of Rule 4–342(d) having not been complied with, the proper remedy is to vacate the sentence and remand the case for resentencing in accordance with the rule.  *Brown v. State*, 11 Md.App. 27, 34, 272 A.2d 659 (1971); *Kent v. State*, 287 Md. 389, 394, 412 A.2d 1236 (1980).

REVOCATION OF PROBATION AFFIRMED; SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING IN ACCORDANCE WITH THIS OPINION. ONE-HALF OF COSTS TO BE PAID BY APPELLANT; ONE-HALF OF COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.

ROBERT M. BELL, Judge, dissenting.

Lest my position be misunderstood, I begin this dissenting opinion with the recognition that, rather than a grant of immunity from punishment, "probation is a matter of grace, not entitlement, which permits a wrong-doer to keep his

freedom 'as long as he conducts himself in a manner consonant with established communal standards and the safety of society' ". *Kaylor v. State*, 285 Md. 66, 75, 400 A.2d 419 (1979), quoting *Scott v. State*, 238 Md. 265, 275, 208 A.2d 575 (1965). To avoid revocation, the probationer is obliged to substantially comply with the conditions of his probation; unless resulting from circumstances beyond his or her control, the violation of one or more *lawful* conditions of probation is sufficient justification for its revocation. *Humphrey v. State*, 290 Md. 164, 167–68, 428 A.2d 440 (1981). *See Dean v. State*, 291 Md. 198, 202, 434 A.2d 552 (1981). Of course, to be lawful, the conditions must be reasonable and have a rational basis, *Watson v. State*, 17 Md.App. 263, 274, 301 A.2d 26 (1973), and they must "provide the probationer with reasonable, specific direction within in the ambit of the initially expressed general condition." *Hudgins v. State*, 292 Md. 342, 348, 438 A.2d 928 (1982). With these principles in mind, we must consider Maryland Code Ann. art. 27 § 36, *Mackall v. State*, 283 Md. 100, 387 A.2d 762 (1978), and part one of the majority's opinion to place this matter in context.

Section 36, captioned *Carrying or wearing concealed weapon; carrying openly with intent to injure; carrying by person under eighteen at night in certain counties,* by its terms, in subsection (a), expressly exempts from its coverage, penknives without switchblades and handguns. Unlike handguns, the wearing, carrying, and transporting of which are covered by Maryland Code Ann. art. 27 § 36B, there is no separate or special statutory treatment of penknives. Thus, their exclusion from the reach of § 36(a) inexorably leads to the conclusions that carrying a penknife without switchblade in one's pocket is not illegal and that such a knife is not a dangerous and deadly weapon *per se. Mackall* supports both conclusions: whereas the Court characterized the items specifically enumerated in the statute as "dangerous and deadly weapons *per se* ", it characterized penknives without switchblades simply as "dangerous and deadly weapons", which it found simply did not fall

within the ambit of § 36(a). 283 Md. at 106, 387 A.2d 762. Further support is provided by the *Mackall* Court's requirement that the proof in a prosecution pursuant to § 36(a) must affirmatively demonstrate the inapplicability of the exception for penknives. *Id.* at 111, 387 A.2d 762. Moreover, what constitutes a penknife is not to be determined by its size since "[p]enknives today are commonly considered to encompass any knife with the blade folding in the handle, some very large." *Id.* at 113, n. 13, 387 A.2d 762.

I am satisfied that a person over eighteen may carry a penknife without switchblade, even though very large, in his pocket, day or night, without violating the law of this state. On the other hand, the same may not be said for a person under the age of eighteen in certain counties between certain hours.[1] That the legislature drew this dis-

---

1. Since the majority has not set out all of § 36(a), in light of the above, I will do so here:

(a) *Carrying concealed or openly with intent to injure; carrying by persons under eighteen at night in certain counties.*—Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon, chemical mace or tear gas device openly with the intent or purpose of injuring any person in any unlawful manner, shall be guilty of a misdemeanor, and upon conviction, shall be fined not more than $1,000 or be imprisoned in jail, or sentenced to the Maryland Department of Correction for not more than three years; and in case of conviction, if it shall appear from the evidence that such weapon was carried, concealed or openly, with the deliberate purpose of injuring the person or destroying the life of another, the court shall impose the highest sentence of imprisonment prescribed. *In Cecil, Anne Arundel, Talbot, Harford, Caroline, Prince George's, Montgomery, St. Mary's, Washington, Worcester, Kent, and Baltimore Counties it shall also be unlawful and a misdemeanor, punishable as above set forth, for any person under eighteen years of age to carry any dangerous or deadly weapon, other than a handgun, between one hour after sunset and for one hour before sunrise, whether concealed or not, except while on a bona fide hunting trip, or except while engaged in or on the way to or returning from a bona fide trap shoot, sport shooting event, or any organized civic or military activity.*

tinction is very significant in view of the argument advanced by the majority on p. 641 of the majority opinion. See page 642 *infra*. As the majority sees it,

> The question before us, therefore, is not whether the State met its burden of proving that appellant's knife was not a penknife, but whether Judge Melbourne erred in determining that the knife was a dangerous weapon at the time, in the place and under the circumstances of its being taken from appellant by Cpl. Groves.

It answers that question by holding that "Judge Melbourne was not clearly erroneous in finding, under the totality of the circumstances, that appellant had violated a condition of his probation by possessing a dangerous weapon without permission from his probation officer." Along the way, the majority concludes that whether the knife appellant was carrying was a penknife within the meaning of Art. 27 § 36(a) has no significance except with respect to condition number four of his probation, which required that he obey all laws, and recognizes that a variety of items, some quite innocuous and clearly not weapons *per se,* may be used or intended to be used as weapons and, when so used, or, by circumstances, are shown to have been intended to be so used, may be dangerous and deadly weapons.

I agree with the majority that the condition that appellant obey all laws is not here at issue. I disagree, however, that the statute is not relevant to the determination required to be made by the trial judge. As I see it, § 36(a) provides the standard against which appellant's action and knowledge regarding the carrying of the knife must be measured. If the knife is a penknife without switchblade, in the absence of a specific instruction to the contrary, it may not be assumed that appellant was aware that carrying that particular knife was prohibited by his probation order. This is true because it is not against the law to carry such a knife at anytime or in anyplace, day or night. If, on the other

---

By amendment, effective July 1, 1984, a star knife was included in the list of prohibited items and defined.

hand, the knife is not a penknife, it would be a dangerous and deadly weapon *per se*, the mere possession of which would be a violation of probation. By permitting the trial judge to revoke appellant's probation without first determining if the knife is a penknife, the majority, in effect, endorses the revocation of probation for something the probationer could not possibly have known to be a violation of the terms of his probation. This, I think, is fundamentally unfair.

The majority recognizes that a penknife is not a weapon *per se* and it correctly observes that its character as a weapon, therefore, must be determined from the surrounding circumstances. I do not quarrel with this observation. And ordinarily I would not quarrel with the majority's assertion that "[i]f the object, although normally a tool, is closely akin to a weapon, as a knife or an axe, far less proof should be required to persuade one of its character as a weapon on a given occasion than if the object bears little or no resemblance to traditional weapons . . .". This is not, however, the ordinary case. Here, a statute may specifically exempt the knife from its coverage. This circumstance distinguishes this case from the case postulated by the majority and, to my mind, requires a greater, rather than lesser or even equal, showing by the State that the knife was a weapon on this occasion, than would be required in the case of an item, which could be used as both a tool or weapon, but as to which there is no statutory pronouncement as to its status.

In the absence of a prior determination that the knife is not a penknife, the circumstances of this case do not support the court's finding. Appellant was found near a vacant apartment, on which the outside lock was broken. He had the knife in question in his pocket. There is no requirement in law that, to qualify for the exception, a penknife without switchblade, even one "closely akin to a dirk or dagger when open" must be shown to have been carried for use as a tool, rather than as a weapon. The majority has engrafted onto § 36(a), requirements that neither it, nor

*Mackall* contemplates. Therefore, in the absence of a finding that the knife was not a penknife, I would find these circumstances insufficient to show that the knife was being used as a weapon or was intended to be so used. Were it determined that the knife is not a penknife without switchblade, the inference drawn by the majority would clearly be rational.

The State does not contend that appellant was given specific instructions respecting the nature of the weapons that he could not possess. While there are weapons about which he would not need to have been instructed, in view of § 36(a)'s exemption, this knife, if it is a penknife, does not fall within that category. As previously mentioned, carrying a penknife is not *per se* illegal, and, the knife itself is not *per se* a dangerous and deadly weapon.

If appellant had been advised that he could not carry a penknife without switchblade,[2] a different, but equally interesting question would be before us—may a probation condition prohibit the doing of an otherwise lawful act?—an issue as to which, I suspect, I would have fewer problems. When, however, he is not specifically so advised, to apply the condition to include a penknife without switchblade would be fundamentally unfair because that condition, as initially expressed, did not "provide the probationer with reasonable, specific directions" as to its requirements. Probation revocation proceedings must be fundamentally fair, which necessarily requires that revocation be ordered only on sufficient evidence and only if the probationer fails to conform his conduct to the requirements of his conditions of

---

2. The probation rule allegedly violated provides:

   3. Get permission from his Probation Agent before:

       d. owning, possessing, using or having under his control any dangerous weapon or firearm of any description.

There is no punctuation of any kind following the term, "firearm"; thus, the phrase, "of any description", refers only to "firearm" and not to "any dangerous weapon." I conclude, therefore, that this rule cannot be read as advising appellant that he could not carry a penknife without switchblade.

probation. If the probationer cannot conform his conduct because he was not advised of the requirements, the proceedings are unfair and the evidence insufficient. That is the case here.

Because so many things can be weapons and because no clear rule is announced for assessing whether a given item is a dangerous and deadly weapon, the possession of which is a violation of probation, this decision sets a dangerous precedent. It has been reasoned: just as a penknife may be a weapon, so too could a piece of cord, a musical instrument or a necktie. It is essential that before someone's probation may be revoked for possessing an object that is not a weapon *per se,* substantial and clear proof that it is being used or is intended to be used as a weapon must be adduced. Otherwise, how would one on probation know whether he could safely hang up his laundry, serenade his lady friend, or get dressed up for a job interview?

Under the majority opinion, he could not.

I do not consider the majority's discussion of collateral estoppel in part two of its opinion to be necessary to the decision in this case. Therefore, I will limit my comments thereon to a query—Do the unique facts of this case justify the application of the doctrine?—and a tentative answer—I am not so sure.

I would remand to the trial court for a determination of whether the knife in question is a penknife without switchblade.